WILLIAM SAUNDERS, JR., DEFENDANT IN ERROR, v. SMITH REALTY COMPANY, PLAINTIFF IN ERROR.

Submitted December 9, 1912—Decided March 3, 1913.

1. The janitor of an office building upon being asked by the plaintiff, an employe of one of the tenants, what he should do with refuse which accumulated in his employer's rooms, took him into the rear cellar of the building and showed him a place there where he might leave it. The tenant was not entitled, by virtue of his lease, to any user of the cellar. *Held*, that the act of the janitor did not constitute *an invitation* to the plaintiff by the owner of the building to use the cellar for the disposition of rubbish, in the absence of proof of authority conferred upon the janitor to act as the representative of the owner in that regard.

2. A mere passive acquiescence by the owner of a building, or his representative, in a certain use of his property, imposes no obligation upon him to keep it in a safe condition for the benefit of the user.

3. A person, being *sui juris*, who undertakes to use a dangerous way, with full knowledge of its unsafe condition, assumes the risk of injuries which may result to him from such use.

4. A person who finds the lights turned off in a passageway which he knows to be dangerous, and attempts to pass through it without first having the lights turned on, it being so dark that he has "to grope his way," is guilty of negligence, and cannot recover for injuries resulting from the dangers of the way of which he had knowledge. *Mullen* v. *Rainear,* 16 *Vroom* 522, approved.

On error to the Supreme Court.

For the plaintiff in error, *Humphreys & Sumner.*

For the defendant in error, *Henry Marelli.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. This suit was an action in tort brought by Saunders to recover damages for injuries received by him through the alleged negligence of the defendant.

The defendant, Smith Realty Company, is the owner of an office building in the city of Paterson, about one hundred feet wide, fifty feet deep and four stories high. Below the first floor of the building there was a cellar in which were located the elevator shaft and elevator drum. Around this drum the elevator cable wound as the elevator was going up and unwound as it was going down. The elevator ran through the building at about its centre from the cellar to the fourth floor. The cellar was divided into two parts, the rear cellar being two and a half feet lower than the front, and three steps, including the landing, led from the one to the other. The elevator shaft and drum were in the front cellar, the drum being in close proximity to the steps. The Paterson Textile Institute occupied one-half part of the fourth floor, and the plaintiff was in its employment. One of his duties was the sweeping up of the refuse from the floor and disposing of it. It was his custom to take it down on the elevator to the front cellar, carry it through to the back cellar, and leave it there. He received no instructions from his employer with relation to the disposition of the rubbish other than that "he should take it downstairs," and testified that he left it in the back cellar because, upon asking the janitor of the building where he should

put it, that functionary took him through the passageway between the front and back cellar and showed him where he might leave it.   Prior to the day on which the accident occurred to him, which was the basis of this suit, he had been depositing the rubbish in the back cellar for about six months. On that day, while returning from the back cellar, he stumbled upon the steps and fell, his hand was caught between the elevator drum and the cable, and was so severely crushed that it became necessary to amputate several of his fingers.   He was about seventeen years old at the time of the accident.

The ground of defendant's liability, as averred in the declaration, and attempted to be proved at the trial, was that the plaintiff was using this back cellar, and the way to it, by the invitation of the defendant, and that the latter was therefore under a duty to him to use reasonable care to keep it safe, and that this duty it failed to perform.

The proofs showed that not only the textile institute, but also some of the other tenants of the building on some occasions, deposited refuse in the back cellar, and it was contended by counsel for plaintiff, and considered by the trial court, that this fact, taken in conjunction with the user by the textile institute, afforded some ground for concluding that the cellar was furnished by the defendant to its tenants for their common use for that purpose, and so brought the case within the rule laid down in *Gillvon* v. *Reilly,* 21 *Vroom* 26, and approved by this court in *Siggins* v. *McGill,* 43 *Id.* 263, viz., that where a building is let to different tenants and a portion of it is held by the landlord for their common use, an obligation rests upon him to take reasonable care to have and maintain the way to that portion of the premises in a safe condition. We think the proofs submitted did not justify the application of this rule.   There was no attempt to show that any of the tenants of defendant's building were using the cellar as of right, as an appurtenant to their respective leaseholds, or that such use inured in any way to the benefit of the defendant.   So far as the textile institute is concerned, the proof is uncontradicted that their lease covered only the portion of the fourth floor occupied by them, and carried with it no right to

the use of the cellar. The fact that the janitor of the building took the plaintiff into the back cellar and showed him where to put the rubbish will not support the inference that either he or his employer was *invited* to use the cellar for that purpose; for the case discloses no authority conferred upon the janitor by the defendant company to act as its representative in that regard, and the nature of his employment was not shown to be of such a character as to make him, by reason thereof, the representative of the defendant for that purpose.

It further appeared in the case that one Smith, who was the manager of the defendant in charge of the building, knew of the fact that the textile institute was using the back cellar for the disposing of its rubbish, but there is no suggestion that this was done by his authority or with his consent except that he made no objection to such use, and so may be said to have acquiesced in it. But a mere passive acquiescence by an owner, or his representative, in a certain use of his property by others involves no liability. *Devoe* v. *N. Y., O. & W. Railway Co.,* 34 *Vroom* 276; *Dieckman, Administratrix,* v. *Delaware, Lackawanna and Western Railroad Co.,* 52 *Id.* 463. It may relieve such users from liability as trespassers, but the most that can be said in their favor is that their use is permissive; and when that is the case the owner is under no obligation to them except to abstain from acts which are willfully injurious. *Vanderbeck* v. *Hendry,* 5 *Id.* 467; *Matthews* v. *Bensel,* 22 *Id.* 30; *Phillips* v. *Library Company,* 26 *Id.* 307; *Fitzpatrick* v. *Glass Manufacturing Co.,* 32 *Id.* 378; *Delaware, Lackawanna and Western Railroad Co.* v. *Reich, Id.* 635; *Taylor* v. *Haddonfield Turnpike Co.,* 36 *Id.* 102.

There being nothing in the proofs submitted to support a finding by the jury that the plaintiff was using the rear cellar, at the time of his injury, by the *invitation* of the defendant, it was improper for the trial court to permit the jury to so find, and for this reason the judgment under review must be reversed.

The judgment is objectionable for another reason. The case showed (and it was undisputed) that the defendant had so equipped the front and back cellar with lights that both

the steps, the elevator and elevator drum, as well as their sur-
roundings, were plainly visible when the lights were on. The
plaintiff's claim was that at the time of the accident none of
these lights were burning; that the cellar was so dark he could
see nothing and had to grope his way from the front to the
rear and back again, depending for guidance upon keeping his
hand on the cellar wall. He admitted that he was perfectly
familiar with the conditions of the cellar, having learned them
while the lights were burning, this being the case on many of
his trips to the cellar. Accepting as proved the fact that the
passageway from the front to the rear cellar was dangerous
to one passing through it in the dark, the danger was as ob-
vious to the plaintiff as to the defendant. He was *sui juris,*
and when he undertook to use the passageway with full knowl-
edge of the danger he ran in doing so, he assumed the risk of
such injury as might result to him from such use, and cannot
now charge it upon the defendant. *Vorrath* v. *Burke,* 34
*Vroom* 189.

In addition, it may be said that his conduct in attempting
to pass along this dangerous way in total darkness was culp-
ably negligent. The evidence discloses no necessity for his
doing so. If he was unable to turn on the lights himself, he
could either have had this done for him by the janitor or
someone else, or, in the event of his being unable to do this,
could have left the emptying of his rubbish until a more sea-
sonable time, when he should find the passageway properly
lighted. In this respect the case is quite similar to that of
*Mullen* v. *Rainear,* 16 *Vroom* 520, where the plaintiff was in-
jured by the breaking down of a balcony—part of the prem-
ises occupied by him as tenant—while he and his wife were
carrying a heavy stove across it. His case was that the balcony
was weak and out of repair, that the defendant, who was his
landlord, was responsible for its condition, and therefore liable
to him for the injuries which he received. The court held
that although the landlord was bound to keep the balcony in
repair, nevertheless, if the plaintiff knew of its weak condition
when he subjected it to the strain of the combined weight of
his wife, the stove and himself, he was guilty of negligence

contributing to the accident and could not recover. This case, although not decided by this court, correctly states the rule involved in its decision and meets with our approval.

The judgment under review will be reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BOGERT, VREDENBURGH, CONGDON, TREACY, JJ. 13.