42 N.J. Super. 398 (1956)
126 A.2d 899
HELEN M. DOHERTY AND JOHN J. DOHERTY, PLAINTIFFS-APPELLANTS,
v.
TRENTON TRUST COMPANY, A BANKING CORPORATION OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 29, 1956.
Decided November 16, 1956.
*400 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Harry A. Walsh argued the cause for the plaintiffs-appellants.
Mr. Richard J.S. Barlow, Jr., argued the cause for the defendant-respondent (Messrs. Lenox, Giordano & Lenox, attorneys).
The opinion of the court was delivered by FREUND, J.A.D.
The plaintiffs, Helen M. Doherty and John J. Doherty, appeal from a judgment of involuntary dismissal entered by the trial judge at the close of their case tried before a jury.
*401 The testimony discloses that Mrs. Doherty, an employee in the State Division of Employment Security, slipped and fell on the wet floor of a first floor corridor in the defendant's building leased to the Division for its main offices. The accident occurred at about 11:45 A.M. on August 14, 1953, while Mrs. Doherty was on an errand from her office, about two blocks away, to a Division office in the defendant's building. It had been raining heavily since before 9 A.M. She entered the building, passed through a vestibule and a lobby, the floor of which was partially covered by a rubber mat, and then proceeded into the corridor beyond, where she fell. She had noticed that the corridor was "slippery and wet, unusually slippery, and it had a glassy-like finish, a highly polished finish, and it was very wet," and accordingly she used care in walking. She testified that she had previously visited the building in inclement weather and the floors were "always very slippery"; they were waxed and highly polished asphalt tile, but on this occasion were more slippery than usual because of the rain. When asked what caused her fall, she testified that it was "the slippery condition of the floor with wax or with the water on the waxed floor." It was after walking some distance along the corridor that she slipped and fell, sustaining injuries.
Mrs. Leah M. Wittmer, a receptionist, testified that her normal post was at a desk in the lobby, but that she was absent because of illness at the time of plaintiff's accident; that when it rained or snowed, people tracked water from outside the building into the vestibule and beyond into the lobby and corridor. On many occasions she had seen people slip in the wet corridor, two actually fell; that she had called this condition to the attention of the building superintendent. Another witness testified to the wet and slippery condition of the corridor floor at the time the plaintiff fell, and that she herself had once fallen there.
There was testimony that the corridor was poorly lighted, the only light coming from over the partitions of adjacent offices; that there was a ridge in the floor of the corridor *402 about 10 or 15 feet from the place where the plaintiff fell, and that on the morning of the accident 200 or more people had passed through the corridor. Additionally, there was expert testimony by a chemist with experience in safety engineering that an asphalt tile floor is not of itself particularly slippery and that water on its surface does not substantially increase its slipperiness; but that if the asphalt tile is first waxed and then water accumulates on its surface, it becomes like ice. He further testified that under such conditions floors should be covered "to protect the people who would be walking along" and that the ridge might have had some effect on the plaintiff's fall by causing a change of pace upon a slippery surface.
At this juncture, the defendant moved for an involuntary dismissal on the grounds that there was no proof of negligence on its part and that Mrs. Doherty had assumed the risk involved in walking along the corridor since she had observed its slippery condition before venturing into it. The trial court ruled that the question of negligence was properly for the jury, but that assumption of risk should be found as a matter of law, and on that ground granted the motion for dismissal. From the judgment, the plaintiffs appeal, arguing that both the question of negligence and of assumption of risk were for the jury.
It is a settled rule of law that the owner of premises to which the public is invited for business purposes, owes a duty to exercise reasonable care to see that one who enters his premises upon that invitation has a reasonably safe place to do that which is within the scope of the invitation. Picariello v. Linares & Rescigno Bank, 127 N.J.L. 63 (Sup. Ct. 1941), affirmed o.b., 127 N.J.L. 565 (E. & A. 1942); Brody v. Albert Lifson & Sons, 17 N.J. 383 (1955). In the Brody case, which involved an action to recover for injuries sustained from a fall on a wet terrazzo floor, the court found that there was evidence from which the jury could reasonably infer that the nature of the floor was such that it was peculiarly susceptible to becoming dangerously slippery when wet. In the instant case, the evidence is *403 substantially the same. Here, there was expert testimony that after an asphalt tile floor is waxed and then becomes wet, it is like ice, and testimony that on occasion people slipped, and at least two fell. Further, that defendant's building superintendent had been notified of the slippery condition of the floor when wet, but took no adequate precautions to render it safe. Such an omission on his part might reasonably be found by the jury to constitute negligence.
We proceed now to consider whether Mrs. Doherty should be held to have assumed the risk of traversing the corridor in its slippery condition. The conception of assumption of risk has received considerable attention by our courts, and the cases are emphatic that unless assumption of risk appears clearly and conclusively as a matter of fact, or as a necessary and exclusive inference from the undisputed facts, the question should be left for the jury's consideration. Bacak v. Hogya, 4 N.J. 417, 427 (1950); Rapp v. Public Service Coordinated Transport, 9 N.J. 11 (1952). The principle of assumption of risk contemplates that one with knowledge of a risk, or of facts sufficient to put a reasonably prudent person on notice of risk, must exercise the degree of care that the risk requires; but it is not intended that because a person observes a potentially dangerous condition in a passageway he necessarily assumes the risk of any injury which might be incurred in traversing the passageway, even where injury results therefrom. Shipp v. Thirty-Second St. Corp., 130 N.J.L. 518 (E. & A. 1943); Halpern v. Barbara Holding Corporation, 5 N.J. Super. 87 (App. Div. 1949); 1 Stevenson, Negligence in the Atlantic States, § 124, p. 222; Prosser on Torts (2d ed.), c. 10, § 55, p. 309.
Thus, it is not sufficient merely to establish that the condition was observed  we must determine whether a reasonably prudent person would then continue through the corridor and, if so, what degree of care should be exercised, bearing in mind that a reasonably prudent person is not to be "endowed with attributes which properly belong to a person of exceptional perspicuity and foresight." Battaglia *404 v. Norton, 16 N.J. 171, 179 (1954). Clearly, the questions to be answered are essentially factual.
In the instant case, the plaintiff testified that before entering the corridor she observed that the floor was slippery and wet, yet she proceeded. She further testified that she had previously walked through the corridor during inclement weather, but when asked specifically whether she had done so when it had been raining, she testified that she could not recall. Since we are here bound to resolve in plaintiff's favor all inferences legitimately to be drawn from the testimony, we must accept as true her testimony that this was her first experience with the floor of the corridor under the particular conditions which existed on the morning of the accident.
Under all the circumstances, can we say that it was "unreasonable for her to infer that despite the appearance of the floor [the corridor] might still not be too dangerous to traverse?" Shipp v. Thirty-Second St. Corp., supra. Should she have turned and gone back through the lobby, part of which must also have been wet, or should she have sought assistance? Should she have appreciated the risk of continuing through the corridor under such circumstances? Similar questions were asked by the court in Taneian v. Meghrigian, 15 N.J. 267, 282-3 (1954), where the plaintiff was injured by a fall on a common stairway. There, the court said: "To put these queries is to show the essential factual nature of the inquiry."
Assuming the plaintiff's dilemma was whether to continue through the wet corridor or go back through the wet lobby, was she chargeable with assumption of risk for initially walking through the lobby, in view of the fact that many people had previously used it that morning? The question of assumption of risk should have gone to the jury.
Judgment reversed and cause remanded for a new trial.