47 N.J. Super. 372 (1957)
136 A.2d 27
LUCILLE BENTON AND THOMAS R. BENTON, PLAINTIFFS-APPELLANTS,
v.
YOUNG MEN'S CHRISTIAN ASSOCIATION OF WESTFIELD, NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 4, 1957.
Decided November 13, 1957.
*373 Before Judges GOLDMANN, FREUND and CONFORD.
*374 Mr. Stanley W. Greenfield argued the cause for appellants.
Mr. Harvey G. Stevenson argued the cause for respondent (Messrs. Stevenson, Willette & McDermitt, attorneys).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Plaintiff Lucille Benton sued for injuries suffered when she slipped and fell on the stairs leading from defendant's swimming pool. Her husband sued per quod. The answer set up the defenses of contributory negligence, assumption of risk, and immunity from liability because of defendant's status as a charitable institution. Defendant moved to dismiss the action on all three grounds at the close of plaintiffs' case. The trial court granted the motion, giving as its reasons the charitable immunity of defendant and plaintiffs' assumption of risk. Plaintiffs appeal from the resultant judgment.
Mrs. Benton had been a member of the Westfield YWCA for about two years before the date of the accident. The YWCA and defendant YMCA, both admittedly charitable institutions, had an arrangement whereby YW members were permitted to use facilities in the YM building, the cost being apportioned between the respective associations. YW members used the YM swimming pool at specified times during the week.
Plaintiff had been attending the YM swimming pool almost every Thursday evening. On the evening in question she went swimming about 8 P.M. She donned her swimming suit, took the required shower in the ladies' shower room, went down a flight of steps to a short passageway or tunnel, proceeded through the tunnel and then ascended another flight of some 12 steps and passed through a door to the swimming pool. The steps were covered by pads of an undetermined substance. A number of women used the pool that evening.
Plaintiff and a friend left the pool at 9:25 P.M., others having preceded them. As plaintiff started to descend the stairs leading from the pool to the tunnel she grasped the handrail on the left, but as she took her first step the stair pad slipped from under her and she fell down the entire *375 flight, suffering a spine injury. Her testimony, as well as that of her two witnesses, was that the steps were always wet; some of the pads were warped by dampness; others were completely off, and some half off. Plaintiff did not know that the top step mat was loose until she felt it go out from under her. On the evening of the accident, and also prior thereto, the drains in the women's shower room were clogged, so that there was about three or four inches of water through which swimmers had to walk before reaching the stairs leading down to the tunnel. Plaintiff stated that the described conditions existed from the time she first started using the pool and she had complained of them to a YW representative on numerous occasions. However, nothing had been done to correct them.
We take note of several elements in this factual context. The steps and tunnel were the only means of passage between the shower room and the pool. Others had used the steps without incident. Plaintiff had grasped the handrail as she started down the steps to the tunnel. Where contributory negligence or assumption of risk do not clearly and conclusively appear as a fact, or as a necessary and exclusive inference to be drawn from undisputed facts by reasonable men in the exercise of a fair and impartial judgment, there is no warrant for removing those questions from the consideration of a jury. Rapp v. Public Service Coordinated Transport, etc., 9 N.J. 11 (1952); Bacak v. Hogya, 4 N.J. 417 (1950). Dismissal of a negligence action by the trial court on the ground of assumption of risk or contributory negligence may only be entered in the clearest case, where a contrary hypothesis is not fairly admissible. Battaglia v. Norton, 16 N.J. 171 (1954).
It is not sufficient, as defendant argues, merely to establish that the conditions present on the steps were observed by Mrs. Benton. The test is whether the jury would believe that a reasonably prudent person would have used the steps at all under the circumstances and, further, that in using the steps plaintiff exercised that degree of care which a reasonably prudent person would have used for her own safety in the attendant circumstances. Pona v. *376 Boulevard Arena, 35 N.J. Super. 148 (App. Div. 1955); Doherty v. Trenton Trust Co., 42 N.J. Super. 398 (App. Div. 1956).
Plaintiff's conduct did not, of itself, preclude submission to the jury of the issue of either assumption of risk or contributory negligence. The trial court therefore committed error in granting defendant's motion of dismissal, there being sufficient evidence upon which reasonable persons could conclude that plaintiff was not contributorily negligent and did not assume the risk, and that she exercised due care in the circumstances. Pona v. Boulevard Arena and Doherty v. Trenton Trust Co., above; Shipp v. Thirty-Second Street Corp., 130 N.J.L. 518 (E. & A. 1943).
This brings us directly to the second ground for the dismissal of the action  defendant's immunity from tort liability as a charitable institution. The trial court's determination that Mrs. Benton was a beneficiary of defendant's charitable purpose and not a stranger to it is not challenged on this appeal. Rather, plaintiffs make a frontal and well-reasoned attack on the doctrine of charitable immunity and invite us to overrule it.
As has been noted elsewhere, few subjects in the field of torts have received more able, critical and complete recent treatment at the hands of both courts and commentators than the subject of immunity of charitable institutions. 2 Harper & James, Torts, § 29.16, p. 1667 (1956). The doctrine was once firmly rooted in American law; it is now in full retreat. Beginning with the devastating opinion of Judge Rutledge in President and Directors of Georgetown College v. Hughes, 76 U.S. App. D.C. 123, 130 F.2d 810 (D.C. Cir. 1942), the tide of judicial opinion has run heavily the other way  to repudiate the immunity. Authoritative texts are in almost universal opposition to the doctrine.
Courts of another day grounded their exemption of charitable institutions from tort liability in varying theories; the "trust fund" theory  property devoted to charitable objects should not be diverted from them; the inapplicability of the doctrine of respondeat superior because the charity gets no profit from the enterprise in which it engages its *377 employees; implied waiver or assumption of risk by the injured recipient of the benefits of the charity. Some courts, including our own, have spoken generally in terms of public policy. These grounds have been thoroughly demolished and proved to be invalid in case after case.
It would be supererogation for us to add to what has already so ably been said on the subject, particularly by Justice Jacobs in his very recent dissent in Lokar v. Church of the Sacred Heart, 24 N.J. 549, at page 555 et seq. (1957), where the various grounds for charitable immunity and the authorities are considered at length. See, in addition, the analysis and collection of authorities in Harper & James, above; Prosser, Torts (2d ed. 1955), page 784 et seq.; and the exhaustive annotation, "Immunity of Nongovernmental Charity from Liability for Damages in Tort," 25 A.L.R.2d 29 (1952). Immunity has been denied in all recent decisions in which the court was unfettered by precedent, and even precedent has not prevented some courts from abandoning the doctrine.
The doctrine of charitable immunity found its way into American law through misconception or misapplication of previously established principles. It is doubtful whether the administration of justice has ever been well served by the rule. In any event, it has become outmoded and an anachronism.
In law as in morals, men must be just before they are generous. Charity should not be permitted to inflict injury upon some without a right of redress, merely in order to bestow charity upon others, because the result would be to compel the victim to contribute to the charity against his will.
The emphasis of the law generally has been on liability for wrongdoing, rather than on immunity. The tendency of the law in our time is to shift the burden from the innocent victim to the community at large, and to distribute losses incurred by individuals through the operation of an enterprise among all who benefit by it, rather than to leave them wholly to be borne by those who sustain them.
The maxim is that all men stand on an equality before the law; all should therefore be bound alike or excused alike. In our view the protection and preservation of life *378 and well-being by organized society is of greater importance to mankind than any particular charity, and is superior to property rights.
However, we are not free to repudiate the doctrine of charitable immunity, for our hand is stayed by precedent. D'Amato v. Orange Memorial Hospital, 101 N.J.L. 61 (E. & A. 1925); Boeckel v. Orange Memorial Hospital, 108 N.J.L. 453 (Sup. Ct. 1932), affirmed 110 N.J.L. 509 (E. & A. 1933); Bianchi v. South Park Presbyterian Church, 123 N.J.L. 325 (E. & A. 1939); Jones v. St. Mary's Roman Catholic Church, 7 N.J. 533 (1951). Cf. Simmons v. Wiley M.E. Church, 112 N.J.L. 129 (E. & A. 1934); Kolb v. Monmouth Memorial Hospital, 116 N.J.L. 118 (E. & A. 1936); Rose v. Raleigh, etc., Memorial Foundation, 136 N.J.L. 553 (E. & A. 1948); Lindroth v. Christ Hospital, 21 N.J. 588 (1956).
In the Lindroth case Justice (now Associate Justice of the United States Supreme Court) Brennan reviewed the charitable immunity doctrine and stated that our highest court preferred to await an action squarely presenting the issue before deciding, as plaintiff there urged, that the doctrine should be repudiated. Such an opportunity now presents itself. Collopy v. Newark Eye and Ear Infirmary, Docket A-668-56, motion for certification granted October 21, 1957.
That the time is ripe for a change was recognized by the three justices joining in the dissent in Lokar v. Church of the Sacred Heart, above, 24 N.J. 549 (1957). And see the opinion of Justice Jacobs then sitting in the Appellate Division, in Woods v. Overlook Hospital Association, 6 N.J. Super. 47 (App. Div. 1949), and of Judge Jayne in Rafferzeder v. Raleigh, etc., Memorial Foundation, 33 N.J. Super. 19 (App. Div. 1954).
It has been said by some courts that it is for the Legislature to repudiate the immunity doctrine. To embrace such a view is to resign judicial responsibility. The rule was introduced by the courts without legislative sanction; it is for the courts to undo what they have wrought.
Bound as we are by the rule of a stare decisis, we must affirm.