52 N.J. Super. 39 (1958)
144 A.2d 721
JOHN J. COFFEY, PLAINTIFF-APPELLANT,
v.
MIDDLESEX-SPOTSWOOD, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 8, 1958.
Decided September 15, 1958.
*40 Before Judges GOLDMANN, CONFORD and FREUND.
Mr. Carl A. Frahn argued the cause for plaintiff-appellant (Messrs. Strong and Strong, attorneys).
Mr. Philip M. Lustbader argued the cause for defendant-respondent (Messrs. Schneider, Lustbader and Morgan, attorneys).
The opinion of the court was delivered by CONFORD, J.A.D.
Plaintiff was a sheet metal worker whose employer had contracted with defendant to install heating systems in homes being constructed by the defendant as a developer. Plaintiff's work required his entry and egress from buildings in course of construction before front entrance steps were erected. While leaving one of these buildings in the course of his work he twisted his ankle, and he brings this action on the theory that defendant breached its duty to provide him with a safe place to work. At the conclusion of plaintiff's case the trial judge in the Law Division dismissed the action solely on the ground of assumption of risk. Defendant's brief seeks to justify the action of the trial court on that ground and does not argue that there was no jury question insofar as the duty of the defendant to the plaintiff is concerned.
The structure which plaintiff was leaving when injured could not be feasibly entered in any other manner than through the opening for the front door. The doorsill was about four feet from ground level and the terrain was uneven, Plaintiff had been in and out of the building several times on November 30, 1955, the day of the accident, without *41 incident. He had also worked at 15 or 20 other houses in the development having no front steps "by climbing in and letting myself out." He testified:
"Q. When you came to the project and saw this situation, did you do anything about it? A. There wasn't much we could. We don't build stairs. We just install the heating. If we are told to go in the house we go in the house.
Q. Did you speak to anyone about it? A. Well, it was mentioned around that it was a rough way to get in and out of the house, but what can we do? I have to work."
He also testified on cross-examination that he had no step-ladder at the time although some of the other crews which did this kind of work had been supplied with ladders that morning. The employer did not have sufficient ladders "to go around."
Plaintiff's testimony as to how he left the building when he was injured is unclear as to the precise physical course he pursued. On direct examination he testified:
"Q. Tell us exactly what happened on this day when you were going out of the house, November 30. A. I was going out of the house and I came to the door and sat myself down on the door sill so that my feet would almost touch the ground. It was about two feet away from them to the ground. I hung on to the door jamb and let myself go, and my ankle twisted. I did not stand up and jump. I didn't get back and run and jump. I just sat down on the door sill and pushed myself so I got free of the door and down to the ground. And my ankle twisted."
On cross-examination plaintiff was confronted with testimony he gave on depositions before trial to the effect that "I had to jump down the four feet." The excerpts from the depositions read at the trial indicate that while he then testified that he sat or crouched down and put his foot out before jumping, he also said that he did not sit down "on [his] buttocks" and ease himself out although he could have. He explained at the trial:
"* * * A. I didn't sit all the way down on my buttocks. There was nails sticking up. There was rough wood. I didn't sit flat down but I crouched down. And I consider it a jump when *42 I leave something substantial and I am in the air, if it is a foot or 10 feet; I consider it a jump. It isn't that I sit down on rough boards and slide out. There is nails and everything else. I am not trying to say that I sat flat down and jumped. I crouched down.
Q. You crouched down and then jumped. Is that it? A. That is right. There is lots of ways of crouching and sitting. I can crouch down, put one foot over and let myself go. It is still a jump. I didn't stand up and take a running jump.
Q. In other words, when you say you didn't jump or you did jump, you mean you didn't take a running jump. A. No. I consider when I am in midair, I consider that it is a jump, whether it is one foot or 10 feet; it is still a jump. I have to reach the ground. I can't say I slid down."
Defendant urges that from the foregoing testimony it must be concluded that plaintiff jumped from the door jamb four feet to the ground, and the trial court's remarks in ordering the dismissal indicate an apparent concurrence in that conclusion. However, it is elementary that on a motion for dismissal plaintiff is entitled to every favorable legitimate inference possible from the testimony. O'Donnell v. Asplundh Tree Expert Co., 13 N.J. 319 (1953). So viewing the proofs, the jury could have found that plaintiff crouched or squatted on the doorsill, let his feet down, and then dropped his body, and that the ensuing jump or drop of plaintiff's body to the ground encompassed only the distance of two feet from plaintiff's feet to the ground, rather than the four feet from doorsill to the ground.
The question then presents itself as to whether that action, under the circumstances, barred plaintiff's right of recovery as a matter of law under concepts of assumption of risk or contributory negligence. Our conclusion is in the negative.
We have the benefit of a valuable analysis and summation of the varying senses in which the term "assumption of risk" has been used by the courts, in the opinion by Judge Clapp for this court in Klinsky v. Hansen Van Winkle Munning Co., 38 N.J. Super. 439, 443-445 (App. Div. 1955), certification denied 20 N.J. 534 (1956). We will not repeat that discussion here nor the extensive collection of authorities therein cited. See, also, White v. Ellison Realty Corp., 5 N.J. 228, 235 (1950); Ford v. Reichert, *43 23 N.J. 429, 434 (1957); Hartman v. City of Brigantine, 23 N.J. 530, 536 (1957). It suffices for present purposes to point out that the better reasoned viewpoint is that in the situation where the facts proven permit the inference that the defendant has breached a positive duty to the plaintiff, such as, in the present case, that of exercising ordinary care to render the premises in which plaintiff was to work reasonably safe for such activity (Gudnestad v. Seaboard Coal Dock Co., 15 N.J. 210 (1954)), the mere knowledge by the plaintiff that there is a degree of risk in his use of the premises does not as a matter of law bar his action for injuries under the theory of assumption of risk. Such knowledge and the degree of risk assumed go only in such case to the issue of plaintiff's contributory negligence, and the over-all factual issue is the reasonableness of plaintiff's exercise of care for his own safety in the light of all the attendant circumstances, including availability of safer alternatives and the employment exigencies leading to the exposure to the risk. The fact of exposure to hazard is only one element of plaintiff's behavior to be weighed in such case. See 2 Harper and James, The Law of Torts (1956), § 21.1, p. 1162 ("Assumption of risk in a secondary sense"); Pona v. Boulevard Arena, 35 N.J. Super. 148 (App. Div. 1955), certification denied 19 N.J. 326 (1955); Doherty v. Trenton Trust Co., 42 N.J. Super. 398 (App. Div. 1956); Benton v. Y.M.C.A. of Westfield, 47 N.J. Super. 372 (App. Div. 1957), reversed on another ground in 27 N.J. 67 (1958).
Defendant relies upon Mergel v. Colgate-Palmolive-Peet Co., 41 N.J. Super. 372 (App. Div. 1956). We think the result there may be better justified on the basis of absence of proximate cause than assumption of risk.
Of course, in a given case the degree of hazard to which the plaintiff exposes himself, even in the class of cases discussed above, may be so great that, as against the surrounding circumstances, the court might properly conclude that the imprudence of his behavior is not fairly debatable, and consequently direct dismissal of the action. But the *44 case made must measure up to the standards laid down for determining the existence of contributory negligence as a matter of law. The alleged contributory negligence must be clearly seen conclusively as a fact or as a necessary and exclusive inference from the plaintiff's proofs. Gudnestad v. Seaboard Coal Dock Co., supra (15 N.J. at page 222). Otherwise the issue is for the jury.
We think the issue here was for the jury. That body might have found that it was not unreasonable for the plaintiff to take the risk of a two-foot jump or drop from the doorsill in view of the number of times he had safely taken comparable risks previously in that and other houses in the development, and the practical exigencies of the job which plaintiff had to perform for his employer. That the jury might well have rather concluded to the contrary is not determinative.
Reversed.