CHARLES SEIPEL, PLAINTIFF-APPELLANT, v. CHARLES SEVEK AND MELBA SILVERMAN, DEFENDANTS-RESPONDENTS, AND ROLAND K. THEN, HERBERT M. THEN, CIRIOCO SCOPPETTUOLO AND PONTIAC CONSTRUCTION COMPANY, A CORPORATION OF NEW JERSEY, DEFENDANTS.

Argued May 5, 1959—Decided June 1, 1959.

594

Mr. *Edward M. Gurry* argued the cause for plaintiff-appellant (*Messrs. Rizzolo & Montalbano,* attorneys).

Mr. *Merritt Lane, Jr.* argued the cause for defendants-respondents (*Messrs. McCarter & English,* attorneys).

PER CURIAM.   In this automobile negligence action, the Appellate Division reversed plaintiff's personal injury and property damage judgments against the defendants.   The reversal was predicated upon a declaration that the plaintiff had been guilty of contributory negligence as a matter of law.   53 *N. J. Super.* 151 (*App. Div.* 1958).   We granted certification.   29 *N. J.* 136 (1959).

On January 4, 1956, at about 7:50 A. M., plaintiff, accompanied by two fellow employees, was driving his car west on Bloomfield Avenue in Montville Township, New Jersey. The roadway at the place of accident consists of two 10-foot-wide traffic lanes on each side of a center grass plot 16 feet in width.   There is a 12-foot shoulder on the north side and one of 2 feet on the south side.   On the morning in question the highway was icy and the area was foggy.   Visibility was limited.

Just prior to the first collision Seipel was driving, at 10 to 15 miles per hour with his parking lights on, in the left westbound lane because he intended to turn left at the Route 46 interchange which was a short distance away. The car he was following suddenly swerved and slowed down, its brake lights showing.   Seipel applied his brakes and lessened his speed.   Before his car came to a halt, it was struck in the rear by the automobile of Roland Then.   In spite of this impact, which increased his forward acceleration to some extent, he was able to bring his car to a stop without skidding and without any contact with the vehicle ahead of him.   It came to rest still in the left lane and close to the center grass plot.   Seipel got out immediately, leaving the lights on and motor running, and the car where it was standing.   His purpose was to look for

the automobile which had struck his vehicle (it not being visible in his rear view mirror nor to his right) to talk to the driver. As he was in the act of alighting, he noticed Vuolo, one of his passengers, who had been sitting beside him in the right front seat, move over toward the driver's position. Vuolo testified that his purpose was to move the car off the highway. He assumed the driver's place and as he reached for the door in order to close it, the vehicle was struck again in the rear.

On leaving his car, plaintiff noticed that Then had backed his vehicle onto the north shoulder about 30 feet away. As he approached Then, he inquired about his brakes and lights, but before Then had a chance to reply, Seipel heard another crash. This mishap, of course, was the one Vuolo spoke of, and coincidentally the driver of the second accident car was Herbert Then, a brother of Roland. Plaintiff's automobile was projected forward about 15 feet and its position reversed so that it faced in an easterly direction but was still on the roadway. On this happening, Vuolo gave up his effort to move the Seipel car. He abandoned it there. Plaintiff looked once to the east, in which direction he said he could see two or three car lengths, although further evidence indicated the visibility was somewhat greater, and ran to the place where the vehicles had come to rest. The reason was to ascertain if any one was hurt and to provide assistance. He climbed over the rear bumper of his car, which was inches away from Herbert Then's front bumper. While doing so, in looking through the windshield, he could see no one at the wheel of Then's vehicle. He reached and started to open the door to see what had happened to the driver, when a warning call rang out. At this, he backed away and had run six to ten feet in a westerly direction when he was propelled into the air, across the grass plot to the eastbound roadway. He had been struck by his own car which was hit by the truck of defendant Silverman, being driven by the defendant Sevek, which in turn had been struck by another truck owned by

defendant Pontiac Construction Company and operated by defendant Scoppettuolo. The sequence of the last two collisions with relation to the cause of the propulsion of plaintiff's car into him, was in dispute. The jury exonerated Pontiac Construction Company and Scoppettuolo. A verdict for plaintiff's personal injuries was returned against Sevek and Silverman and one for his property damage was awarded against Herbert Then, Sevek and Silverman. The mission of the jury to place the responsibility for the total occurrence was a difficult one. They were instructed with care by the trial court and their verdict demonstrated an understanding of the charge and of their burden.

■ The Appellate Division held Seipel's act in leaving his car on the highway after the first accident to be so clearly contributorily negligent and so manifestly a proximate contribution to all that followed, that reasonable men could not differ about it. We cannot agree.

"Contributory negligence is not a term that classifies conduct in the abstract. Negligence is relative and not absolute, depending upon the requirements of due care in the particular circumstances; and whether there was such want of care for one's safety as to constitute a contributing proximate cause of one's injury is generally for obvious reasons a question for the jury." *Hickman v. Dutch Treat Restaurant, Inc.*, 3 *N. J.* 460, 465 (1950).

"Only in the clearest case of contributory fault, where the contrary hypothesis is not fairly admissible, does the question become one of law for decisive action by the court. Care is to be taken that the reasonable man be not endowed with attributes which properly belong to a person of exceptional perspicuity and foresight." *Battaglia v. Norton*, 16 *N. J.* 171, 179 (1954).

In other words, unless the contributory negligence is a necessarily exclusive conclusion from the facts, there is no warrant for removal of the issue from the consideration of the jury. *Rapp v. Public Service Coordinated Transport, etc.*, 9 *N. J.* 11 (1952).

■ In our judgment, the course of action taken by plaintiff in leaving his car directly after the first accident, considered in the light of the totality of the circumstances then

existing, cannot be said to have removed his claim from the area of jury consideration. Nor can it be said, as a matter of law, that his failure to move it immediately and personally in the factual framework constituted a proximate contribution to his own injury and damage to such an extent as to require the trial court to take the case from the jury.

Defendants laid the major stress at the oral argument on the contention that plaintiff should be denied recovery for a reason not advanced by the Appellate Division, *i. e.*, that he was guilty of contributory negligence because he left a place of safety at the side of the road and moved to a place of danger just before the final collision or collisions which resulted in his injuries. Here again we feel that the problem was for jury determination. It was for the triers of the fact to evaluate the conduct in the light of the testimony as to the observation Seipel made, all of the testimony expressly or inferentially indicating visibility on the roadway, the distance he moved and the movements he engaged in to the point where he was about to open the door of the Then car when the last mishap occurred, and his statements with respect to the nature of his errand at the time. *Cf. Marshall v. Nugent*, 222 *F.* 2d 604 (1 *Cir.* 1955); *Annotation*, 58 *A. L. R.* 2d 270 (1958).

The determination of the Appellate Division is reversed and the judgments for the plaintiff are reinstated.

*For reversal*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO —7.

*For affirmance*—None.