Michael **SAPORITO**, Plaintiff-Appellant,

v.

**HOLLAND–AMERICA LINES,**
Defendant-Appellee.

No. 13244.

United States Court of Appeals
Third Circuit.

Argued Oct. 6, 1960.
Decided Nov. 23, 1960.

Lawrence E. Florio, Hoboken, N. J.. (Florio, Dunn, Marciano & Lypinski, Hoboken, N. J., Samuel L. Marciano, Hoboken, N. J., on the brief), for appellant.

Allen C. Mathias, Jersey City, N. J. (Smith, James & Mathias, Jersey City, N. J., on the brief), for appellee.

Before BIGGS, Chief Judge, and HASTIE and FORMAN, Circuit Judges.

FORMAN, Circuit Judge.

■ This is an appeal involving a personal injury negligence action in which jurisdiction was based on diversity of citizenship. Since the accident occurred in New Jersey, the law of that state is applicable.

Michael Saporito, the plaintiff-appellant, was employed by the International Terminal Operating Company about June 1951 to perform maintenance work on its battery operated flat trucks. These trucks were used in stevedoring work for which Holland-America Lines, defendant-appellee, had engaged Saporito's employer. Saporito worked in a room known as the "electrical shop" on the Fifth Street Pier in Hoboken, New Jersey, which had been leased by Holland-America from the Fifth Street Pier Corporation.

This "electrical shop", about 30 feet by 50 feet in size, was entered by means of two overhead garage type doors. It was alleged that one door was not usable because it was obstructed by ships stores and other materials. It was through the unobstructed overhead door that the electric trucks entered and left the "electrical shop".

Saporito testified that late in the afternoon of December 18, 1957, a chauffeur of Holland-America, finding his entrance into its garage blocked by some of the electric trucks, proceeded to remove them

and in doing so crashed one or more into the unobstructed overhead door of the "electrical shop". As a result the wooden plate, which supported the track on which the door traveled by means of small rollers, was pulled away from the wall to which previously it had been secured. The vertical track guide and rollers were bent. He also testified that he reported the damage to a Mr. Volz, allegedly the engineer of Holland-America and that Mr. Volz and his assistants viewed the damage the day after.

Saporito himself made some repairs to the door immediately and assisted two carpenters in making further repairs on the following day.[1] Despite these repairs the door did not function properly. In Saporito's words:

"It raised with some difficulty and also closed with some difficulty in the sense that you had to tug on it in order to close and push on it in order to get it raised."

Hence, as a precautionary measure, Saporito thought it wise to prop it up when it was open. For this purpose he used a 2 x 4 or 3 x 3 piece of dunnage. He continued this procedure for about three weeks prior to the accident which occurred on January 9, 1958.

On that date Saporito opened the door in the morning to permit the longshoremen to remove the electric trucks. As usual he propped it up with a piece of dunnage until the longshoremen left when he removed it and put it aside. As he was about to pull the door down a longshoreman called to him requesting that a piece of equipment be moved. As Saporito was about to answer, the door crashed down on him causing the injuries for which he brought this suit.

The door did not come down vertically in its track. The plate and track broke away from the door and the rollers that followed the track were broken. The door was completely off its suspension and laying in a heap on the ground connected only to its spring by two pieces of cable.

After Saporito presented his case Holland-America moved for an involuntary dismissal on the ground that no negligence had been shown and that Saporito was contributorily negligent, or had assumed the risk, as a matter of law. The trial court found that the testimony presented a jury question as to whether or not Holland-America was negligent and denied its motion in so far as that ground was concerned. The court reviewed the evidence adduced by Saporito and concluded:

"Now, on cross-examination this plaintiff was asked repeatedly regarding the reason for his use of the prop for the door. He said he used that prop ever since the occurrence of the damage to the door two or three weeks before the occurrence of which he complains here. He said he took the precaution of putting the prop in because he thought there was some danger. He put the prop in under the door to keep the door from coming down. He propped it up because he didn't want to take a chance on its coming down. He said it was dangerous and known to him to be dangerous and that he was the only person who raised or lowered that door.

"Now, it seems to me that the old Latin phrase *volenti non fit injuria* is peculiarly applicable to this case. Whether we interpret the situation confronting us on the plaintiff's own testimony as indicating an assumption of risk, or as indicating contributory negligence, it is perfectly obvious that the plaintiff knew that the condition of the door was dangerous. He knew that the only way to prevent that danger was to prop the door. He had continuously used that means to prevent its fall, and then on the day of the accident he removed the prop and the door fell ap-

---

1. Permanent repairs were made by the same two carpenters, employees of the International Terminal Operating Company, some 18 months later.

parently right after the removal of the prop, striking him either on the head or some portion of his body, probably on the head, and inflicting the injuries of which he here complains.

"I find as a matter of law that the plaintiff has precluded his right to recovery by disclosing contributory negligence and/or assumption of risk as far as his conduct was concerned at the time and place of the occurrence of which he complains; so I must grant the motion to dismiss with prejudice at this time."

In the recent case of Meistrich v. Casino Arena Attractions, Inc., 1959, 31 N.J. 44, 155 A.2d 90, 93,[2] Chief Justice Weintraub, speaking for the unanimous New Jersey Supreme Court, reconciled former differences of opinion in previous decisions in New Jersey courts on the meaning of "assumption of risk" and "contributory negligence". In the area in which injury or damage was neither intended nor expressly contracted to be non-actionable, he said:

"[A]ssumption of risk has two distinct meanings. In one sense (sometimes called its 'primary' sense), it is an alternate expression for the proposition that defendant was not negligent, i. e., either owed no duty or did not breach the duty owed. In its other sense (sometimes called 'secondary'), assumption of risk is an affirmative defense to an established breach of duty. In its primary sense, it is accurate to say plaintiff assumed the risk whether or not he was 'at fault,' for the truth thereby expressed in alternate terminology is that defendant was not negligent. But in its secondary sense, i. e., as an affirmative defense to an established breach of defendant's duty, it is incorrect to say plaintiff assumed the risk whether

or not he was at fault." 31 N.J. at pages 48–49, 155 A.2d at page 93.

\* \* \* \* \*

"To determine if assumption of risk in its secondary sense differs from contributory negligence, the critical test is whether a plaintiff's conduct under the former is measured by the standard of the reasonably prudent man, for if it is, nothing remains to distinguish it from contributory negligence." 31 N.J. at page 51, 155 A.2d at page 94.

\* \* \* \* \*

"In applying assumption of risk in its secondary sense in areas other than that of master and servant, our cases have consistently recognized the ultimate question to be whether a reasonably prudent man would have moved in the face of a known risk, *dealing with the issue as one of law or leaving it to the jury* upon the same standard which controls the handling of the issue of contributory negligence." (Emphasis supplied.) 31 N.J. at page 53, 155 A.2d at page 95.

\* \* \* \* \*

"Hence we think it clear that assumption of risk in its secondary sense is a mere phase of contributory negligence, the total issue being whether a reasonably prudent man in the exercise of due care (a) would have incurred the known risk and (b) if he would, whether such a person in the light of all of the circumstances including the appreciated risk would have conducted himself in the manner in which plaintiff acted.

"Thus in the area under discussion there are but two basic issues: (1) defendant's negligence, and (2) plaintiff's contributory negligence. In view of the considerations discussed above, it has been urged that assumption of risk in both its pri-

---

**2.** Involving a plaintiff injured while skating on defendant's ice skating rink and who had noticed that his skates slipped on the turns.

mary and secondary senses serves merely to confuse and should be eliminated." 31 N.J. at page 54, 155 A.2d at page 95.

\* \* \* \* \*

"In short, each case must be analyzed to determine whether the pivotal question goes to defendant's negligence or to plaintiff's contributory negligence. If the former, then what has been called assumption of risk is only a denial of breach of duty and the burden of proof is plaintiff's. If on the other hand assumption of risk is advanced to defeat a recovery despite a demonstrated breach of defendant's duty, then it constitutes the affirmative defense of contributory negligence and the burden of proof is upon defendant." 31 N.J. at page 57, 155 A.2d at page 97.

In the case at bar the trial court found that a jury question had been raised as to defendant's negligence and there is no appeal from that holding. It then determined that Saporito had assumed the risk involved in his conduct in the secondary sense "and/or" had been contributorily negligent as a matter of law. Therefore whether Saporito's conduct may be characterized as contributory negligence *as a matter of law* is the only issue to be decided here.

In order to hold a plaintiff contributorily negligent as a matter of law such negligence:

" \* \* \* must appear clearly and conclusively as a fact or as a necessary and exclusive inference that would be drawn by all reasonable men in the exercise of fair and impartial judgment." Gudnestad v. Seaboard Coal Dock Co., 1954, 15 N.J. 210, 222, 104 A.2d 313, 319.

To the same effect are Berger v. Shapiro, 1959, 30 N.J. 89, 152 A.2d 20; De Rienzo

v. Morristown Airport Corp., 1958, 28 N.J. 231, 146 A.2d 127. Furthermore, only in the clearest case of contributory fault where the contrary hypothesis is not fairly admissible, does the question become one of law for decisive action by the court. Battaglia v. Norton, 1954, 16 N.J. 171, 179, 108 A.2d 1; Seipel v. Sevek, 1959, 29 N.J. 593, 152 A.2d 47.

In a situation somewhat similar to this one the Appellate Division of the New Jersey Superior Court said in Coffey v. Middlesex-Spotswood, Inc., App.Div.1958, 52 N.J.Super. 39, 43, 144 A.2d 721, 723,[3] certification denied 1958, 28 N.J. 186, 145 A.2d 668:

"It suffices for present purposes to point out that the better reasoned viewpoint is that in the situation where the facts proven permit the inference that the defendant has breached a positive duty to the plaintiff, such as, in the present case, that of exercising ordinary care to render the premises in which plaintiff was to work reasonably safe for such activity (Gudnestad v. Seaboard Coal Dock Co., 15 N.J. 210, 104 A.2d 313 (1954) ), the mere knowledge by the plaintiff that there is a degree of risk in his use of the premises does not as a matter of law bar his action for injuries under the theory of assumption of risk. Such knowledge and the degree of risk assumed to go only in such case to the issue of plaintiff's contributory negligence, and the over-all factual issue is the reasonableness of plaintiff's exercise of care for his own safety in the light of all the attendant circumstances, including availability of safer alternatives and the employment exigencies leading to the exposure to the risk. The fact of exposure to hazard is only one element of plaintiff's behavior to be weighed in such case. See 2 Harper and James, The Law of

---

**3.** Plaintiff was a sheet metal worker whose employer had contracted with defendant to install heating systems, in houses being constructed by defendant. The house in which plaintiff was working had no front steps. Hence in order to leave he let himself down from the doorsill to the ground which was four feet below and in doing so he twisted his ankle.

Torts (1956), Sec. 21.1, p. 1162 ('Assumption of risk in a secondary sense'); Pona v. Boulevard Arena, 35 N.J.Super. 148, 113 A.2d 529 (App.Div.1955), certification denied 19 N.J. 326, 116 A.2d 826 (1955); Doherty v. Trenton Trust Co., 42 N.J.Super. 398, 126 A.2d 899 (App. Div.1956); Benton v. Y. M. C. A. of Westfield, 47 N.J.Super. 372, 136 A. 2d 27 (App.Div.1957), reversed on another ground in 27 N.J. 67, 141 A. 2d 298 (1958)."

■ Thus it appears that mere knowledge of the risk alone does not bar a plaintiff's action. To have that effect the voluntary exposure must be unreasonable and it is generally for the jury to say whether that inference should be made. Solomon v. Finer, 1935, 115 N.J. L. 404, 180 A. 567; De Eugenio v. Allis-Chalmers Mfg. Co., 3 Cir., 1954, 210 F.2d 409; Restatement, Torts, Sec. 466, Comment C (1934).

■ We do not believe that the test laid down in the foregoing New Jersey cases was met here. We, of course, keep in mind the basic rule that on a motion for an involuntary dismissal by the defendant the evidence must be viewed in a light most favorable to the plaintiff. Although it is true that Saporito remained under the door after removing the prop the evidence showed that the door remained in position after the prop was removed each time it was used during the period of approximately three weeks preceding the accident. In fact, Saporito testified that from the time the door was damaged he found it necessary to tug on it in order to close it. And when it did fall it did not go down loosely in its tracks but the entire door fell in a heap when the plate and track on the left side, looking out of the shop, gave way.

■ The defendant argued that "the plaintiff was injured solely because he stood under the door while removing the prop, thus failing to take the most simple and obvious care of standing to one side." That Saporito was obliged to remove the prop to close the door is obvious and that it was necessary to stand close to it to do so is equally obvious. Would a step or two have taken him to safety in the circumstances of the door falling as it did? Did he know, or should he have known, from his familiarity with the condition of the plate, that it would give way completely over its entire length? Can it be said that the necessary and exclusive inference to be deduced from Saporito's testimony is that he failed to conduct himself as a reasonably prudent man under the circumstances? We do not think that reasonable jurors could come only to the conclusion that Saporito did not act in accordance with this standard. On the contrary they could find that nowithstanding Saporito's knowledge the risk was so slight and safer alternatives so remote that a reasonably prudent person would have conducted himself as did Saporito. Therefore we cannot agree that Saporito's conduct was contributory negligence as a matter of law.

Holland-America submitted a number of New Jersey cases where non suits against the plaintiffs therein were sustained as matters of law. However, those cases are readily distinguishable from this one. In them invariably each plaintiff "invited calamity" by consciously in some proximate degree making himself "the instrumentality of his own injury" in the face of a known, or what should have been known as a safe alternative.[4]

4. Bratka v. Castles Ice Cream Co., App. Div.1956, 40 N.J.Super. 576, 123 A.2d 793 (Door of refrigerator truck blew shut trapping plaintiff who knew of danger and of available means to prevent entrapment.). Card v. Carrigan, E. & A. 1948, 137 N.J.L. 722, 61 A.2d 263 (Plaintiff fell through open trap of which he had knowledge and warning, which was readily observable.). Saunders v. Smith Realty Co., E. & A.1912, 84 N.J.L. 276, 86 A. 404 (Knowing of dangerous condition plaintiff attempted to pass through cellar in darkness where there was no necessity for so doing and where light was available.). Schwanewede v. North Hudson County Ry. Co., Sup.Ct.1902, 67 N.J.L. 449, 51 A. 696 (Plaintiff attempt-

In the case under consideration fair minded jurors could reach different conclusions as to whether Saporito's conduct was deliberate; as to the measure of his consciousness of how the door would act in view of the fact that until the time of the accident it always remained in position after the prop had been removed and as to whether Saporito had any known alternative safe course.

The judgment of the trial court will be reversed and the case remanded for new trial.

ed to cross street in front of trolley which was going at full speed).

Holland-America also cited Seipel v. Sevek, App.Div.1958, 53 N.J.Super. 151, 146 A.2d 705. There the court held that the plaintiff's act of leaving his car on the highway after an accident constituted contributory negligence *as a matter of law*. It appears, however, that the decision was reversed by the New Jersey Supreme Court, 1959, 29 N.J. 593, 597, 152 A.2d 47, 49 where it was said:

"* * * the course of action taken by plaintiff in leaving his car directly after the first accident, considered in the light of the totality of the circumstances then existing, cannot be said to have removed his claim from the area of *jury consideration*." (Emphasis supplied.)