ALBERT HENDRIKSON, PLAINTIFF-RESPONDENT, v. KOPPERS COMPANY, INC., DEFENDANT-APPELLANT.

Argued March 9, 1953—Decided March 23, 1953.

*Mr. George F. Lahey, Jr.,* argued the cause for the appellant.

*Mr. Thomas J. Armstrong* argued the cause for the respondent (*Messrs. Armstrong & Mullen,* of counsel; *Mr. Thomas W. McVey,* attorney).

The opinion of the court was delivered by

VANDERBILT, C. J. The plaintiff was employed as a foreman by Linde-Griffith Company, contractors engaged by the Public Service Electric and Gas Company to build a meter house on their right-of-way through the property of the defendant Koppers Company, Inc. on the west bank of the Hackensack River in Kearny, New Jersey. The meter house was to be used for measuring gas sold by the defendant to the Public Service. Linde-Griffith had also contracted with Public Service to drive three piles on the property of Koppers at a spot approximately 30 feet from the meter house, for the cost of which it was to be reimbursed by Koppers.

The plaintiff's job as foreman was to supervise certain work on the foundation of the meter house and also, although there was some dispute on this, to see that the three piles were properly cut. He and his men had started on the job on November 17, 1950, but due to the hurricane of November 25 and also the high tide in the river it was often necessary to pump out the water from the location of the meter house and even at times to suspend all·work there. Upon entering the defendant's property each employee of Linde-Griffith, including the plaintiff, was given a pass that had to be surrendered on leaving the premises. The pass did not restrict the holder thereof to any particular part of the defendant's premises.

Approximately 100 feet south of the site of the meter house and even closer to where the piles had been driven the defendant maintained a screening house, the dressing room and toilet facilities of which were used freely by the plaintiff and other employees of Linde-Griffith. The plaintiff also used the telephone in the defendant's screening house in ordering cement for the meter house job. The defendant maintained a covered trench running about 82 feet in an east and west direction alongside the screening house. The top

of the trench was covered with concrete except at a bend where there were wooden planks. The inside dimensions of the trench were about six feet in width and four feet in depth. It contained a 24-inch gas line as well as a six-inch line of steam which had a temperature of some 400 degrees. It was common knowledge among the defendant's employees that occasionally at high tide water collecting in the trench would upon coming in contact with the steam line cause steam to arise from the trench. The plaintiff testified that in going to the screening house he would normally pass over the trench at a distance of some 45 or 50 feet from the bend in the trench. He had never crossed at the bend nor had he ever been any closer to it than 45 or 50 feet.

On December 8, 1950 the plaintiff reported for work at 7:35 A. M. It was rainy and foggy. After receiving his pass at the gate he drove on the premises, parking his car near a shanty used by Linde-Griffith for the storage of its equipment. He walked to the site of the meter house and found the area was flooded under about eight feet of water. He went to the screening house to get warm and there engaged in conversation with one of the defendant's employees named Ford who was screening coal. In order to ascertain whether further work was possible that day, the plaintiff decided to walk to the river to see how the tide was running. Accompanied by Ford he proceeded toward the river along the top of the trench. Ford testified, though plaintiff denies it, that he had warned the plaintiff not to go near the dock. When they came to the bend in the trench the plaintiff suddenly fell into an open hole in the trench containing boiling water caused by the contact of the tidal waters with the steam line. There was testimony that the hole had been open for several days. Ford claimed that there had been a plank barrier on two wood horses across the trench in front of the hole, which the plaintiff pushed aside just before falling. This the plaintiff denied.

As a result of the fall plaintiff sustained very serious and painful injuries. The jury returned a verdict in his favor for $7,500. He moved for a new trial as to damages only

because of the inadequacy of the verdict. The defendant made a motion for a new trial on all issues, contending that the verdict was contrary to the weight of the evidence and was the result of bias, prejudice, passion, or mistake. The trial judge granted a new trial as to damages only and the defendant appealed from the judgment as well as from the order granting a new trial as to damages only. While the appeal was pending before the Appellate Division of the Superior Court we certified the case on our own motion.

██ Before going into the merits of the appeal there is a preliminary question of procedure to be determined. The plaintiff insists that no appeal will lie under *Rule* 4:2–1 from the order granting a new trial as to damages only. It is true that the order for a new trial is not a final judgment, but there remains in full force and effect an adjudication of liability, because the judgment has been set aside solely on the issue of damages. That judgment is here under review. To save time and expense sound judicial practice requires us at this time to consider the appeal from the order directing a limited new trial as well as the appeal from the judgment. Otherwise there will have to be another extended and expensive trial before the vital question raised by the order below could be reviewed. In disposing of procedural matters we should strive to do complete justice and not give partial relief, which may necessitate further appeals without benefit to either party. Although in no way deciding that an appeal can always be taken from such an order, clearly justice here requires such a course.

. In its appeal the defendant raises three points, the first two of which are based upon its contention that as a matter of law the plaintiff was not entitled to recover. First, it argues that as a matter of law the plaintiff was not an invitee on that part of the premises where the fall occurred, but was rather a trespasser or at best a licensee to whom the defendant owed only a duty to abstain from wilful acts. Secondly, the defendant contends that the plaintiff was contributorily negligent in walking on top of the trench and by doing so he assumed a known and obvious risk. Finally, it alleges that

the jury's award was so inadequate and erroneous as to taint the entire verdict, thus requiring a new trial on all issues.

As to the first point, the defendant points out that the plaintiff and his workmen were hired to construct a meter house, that they were invitees on only that part of the premises where the work was being done and on a specified road used by them in going to and from work. It is insisted that by walking on the trench top the plaintiff exceeded his invitation. The plaintiff's answer is that the question of the scope of the invitation was for the jury, but that even if he was a licensee the existence of the open hole was a defect of which the defendant had knowledge or is presumed to have knowledge so as to result in liability. The plaintiff further urges that even if he was a trespasser on the trench top it was a jury question whether the defendant was maintaining a dangerous agency in the form of a four-foot trench containing live steam and boiling water so as to be liable under the doctrine of *Strang v. South Jersey Broadcasting Co.*, 9 *N. J.* 38 (1952). From the record furnished us it appears that below the parties confined the issue to the sole question of whether plaintiff was an invitee and it is not necessary for us to go outside those limits in arriving at our decision.

 Where, as here, the plaintiff was admittedly invited upon the defendant's premises, the question is whether the invitation extended to that part of the premises where the accident occurred. *Phillips v. Library Co.*, 55 *N. J. L.* 307 (*E. & A.* 1893), *Cortright v. Trustees of Rutgers College*, 120 *N. J. L.* 246 (*E. & A.* 1938). Though the testimony was conflicting, there was evidence that the defendant acquiesced in the plaintiff's use of the screening house and thereby invited the plaintiff to cross the trench within 45 or 50 feet of the hole. The plaintiff testified that as a part of his job it was necessary for him to ascertain the height of the water in the river in order to determine the advisability of attempting to perform any work that day. A jury could find that the plaintiff in walking on the trench top toward the river was performing a task in connection with a job in which

the defendant admittedly had an interest and from which it would benefit mutually with the Public Service. Clearly the plaintiff was an invitee upon a part of defendant's premises. Whether in walking upon the trench top he exceeded this invitation was a question for the jury. There was sufficient evidence from which the jury could find an invitation.

The second question is whether there was as a matter of law contributory negligence or assumption of risk on plaintiff's part that bars his recovery. Although there is an obvious difference between contributory negligence and assumption of risk there is a tendency to treat them as identical. The former involves the notion of some fault or breach of duty on the part of an individual. His actions are such as to constitute a failure to use such care for his safety as the ordinarily prudent man in similar circumstances would use. On the other hand assumption of risk, though usually applied to the relationship of master and servant, may be used in other fields. No matter where applied, the doctrine may involve no fault or negligence, but rather entails the undertaking of a risk of a known danger. *Seaboard Air Line Railway v. Horton,* 233 *U. S.* 492, 502, 34 *S. Ct.* 635 58 *L. Ed.* 1062, 1069 (1914); *Cetola v. Lehigh Valley Railroad Co.,* 89 *N. J. L.* 691 (*E. & A.* 1916). But, as stated by Mr. Justice Holmes,

"Assumption of risk in this broad sense obviously shades into negligence as commonly understood. Negligence consists in conduct which common experience or the special knowledge of the actor shows to be so likely to produce the result complained of, under the circumstances known to the actor, that he is held answerable for that result, although it was not certain, intended, or foreseen. He is held to assume the risk upon the same ground. * * *" *Schlemmer v. Buffalo, R. and P. Railway Co.,* 205 *U. S.* 1, 12, 27 *S. Ct.* 407, 409, 51 *L. Ed.* 681 (1906).

Here the testimony was conflicting as to whether the plaintiff had knowledge of the danger. The plaintiff's own testimony was that he had never been closer than 45 feet to the bend of the trench nor was he aware of the hole. He had never seen the wood planks nor had he known that steam

at time was emitted from the trench. The only testimony to the contrary was that of Ford who stated that he had warned the plaintiff not to go near the dock. The day was foggy and rainy; undoubtedly visibility was poor. Whether the plaintiff was at fault in failing to observe the hole or in walking upon the trench top at all is not for us to say. As we stated in *Paolercio v. Wright*, 2 *N. J.* 412, 418 (1949), "the rule is that unless it is clearly established beyond fair debate that the plaintiff was negligent and that the negligence proximately contributed to his injury, a motion for a non-suit or to direct a verdict will be denied." A jury question was presented here.

 Lastly, the defendant contends that the court erred in limiting the new trial to the sole issue of damages. It argues that the verdict of $7,500 was so clearly inadequate as to amount to a compromise on the fundamental issue of liability, thus requiring a new trial on all issues. Although admitting the inadequacy of the award the plaintiff argues that it was the result of a mistake by the jury in the assessment of the damages and that this mistake should be cured by a new trial on that issue only.

The plaintiff, a man 56 years of age, suffered serious, painful and permanent injuries. He was confined to the hospital for six months and during that time he underwent five skin grafting operations. At the time of the trial he had not been able to resume work and was still suffering pain and discomfort in his legs, groin, arm and shoulder. He was unable to raise one arm. His medical bills totalled $5,072.50. At the time of the accident his wages were $135 a week, which meant that from that time until the date of trial, some 96 weeks later, he had a loss of earnings of approximately $12,960, making total special damages of $18,-032.50. The jury's award of $7,500 is clearly an inadequate verdict. In *Esposito v. Lazar*, 2 *N. J.* 257, 259 (1949), we said that "a new trial may be limited to damages only, where that is the only question with respect to which the verdict or judgment is wrong and it is fairly separable from the other issues, and the best interests of justice will be served by

granting a partial new trial." In that same case, however, we held that where the jury obviously resolved the conflicting evidence on the liability issue by awarding inadequate damages a new trial on all issues must be ordered. An award which is clearly the result of compromise so taints the whole verdict as to compel this result. *Sokol v. Liebstein*, 9 *N. J.* 93 (1952); *Juliano v. Abeles*, 114 *N. J. L.* 510 (*Sup. Ct.* 1935). Only in those cases where the verdict is clearly free from compromise should a new trial be limited to the question of damages only.

The award here was approximately 40% of the plaintiff's out-of-pocket expenses and losses without even considering his pain and suffering, permanent injury and the loss of future earnings. The verdict was obviously a compromise compelling a new trial on all issues.

The judgment and order below are reversed and the case is remanded for a new trial on all issues.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For affirmance*—None.