53 N.J. Super. 151 (1958)
146 A.2d 705
CHARLES SEIPEL, PLAINTIFF-RESPONDENT,
v.
CHARLES SEVEK AND MELBA SILVERMAN, DEFENDANTS-APPELLANTS, AND ROLAND K. THEN, HERBERT M. THEN, CIRIOCO SCOPPETTUOLO AND PONTIAC CONSTRUCTION COMPANY, A CORPORATION OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 27, 1958.
Decided December 9, 1958.
*155 Before Judges GOLDMANN, CONFORD and HANEMAN.
Mr. Merritt Lane, Jr., argued the cause for appellants (Messrs. McCarter, English & Studer, attorneys).
Mr. Edward M. Gurry argued the cause for respondent (Mr. Edward M. Gurry and Messrs. Rizzolo & Montalbano, attorneys for and of counsel with respondent).
The opinion of the court was delivered by HANEMAN, J.A.D.
Defendants Sevek and Silverman appeal from a final judgment of the Law Division in favor of plaintiff on a jury verdict of $15,000 for personal injuries and $899 for damages to his automobile.
The only issue brought up for review is the propriety of the trial court's denial of a motion for involuntary dismissal of plaintiff's complaint at the close of the entire case. The basis of this asserted error is that plaintiff assumed the risk or was contributorily negligent as a matter of law. If this be so, it must follow that the trial court erred when it failed to grant their motion.
The action arose from a multiple automobile collision which occurred on January 4, 1956 at about 7:50 A.M. on Bloomfield Avenue in Montville Township, Morris County, at or near the place where Bloomfield Avenue intersects U.S. Route 46. Bloomfield Avenue at the point of the occurrence is a four-lane highway, bisected by a center grass plot approximately 16 feet in width. The highway runs in a general easterly-westerly direction and is heavily travelled. The collision occurred in the westbound roadway. That roadway embraces two traffic lanes, each approximately ten *156 feet in width. It is bounded on the north by a shoulder approximately 12 feet in width and on the south, adjoining the center grass divider, by a shoulder approximately two feet in width. The terrain on both sides of Bloomfield Avenue at this point is low and swampy. Nearby is a river.
On January 4, 1956 the roadway in the vicinity of the scene of the occurrences was icy. The area was blanketed by a rolling fog. Visibility was limited to a distance of from 20 to 40 feet, depending upon the movement of the fog. Plaintiff testified that the visibility at the time of the several collisions hereinafter referred to was limited to a distance of 30 to 40 feet.
Plaintiff, a Connecticut resident, was employed at the time in Parsippany-Troy Hills. He had lived in Caldwell, New Jersey, during the working week for approximately six months prior to the date of the collision. He drove from Caldwell to his place of employment, over Bloomfield Avenue "[e]very working day from the preceding July" and was very familiar with Bloomfield Avenue at the place of the accident.
On the day in question plaintiff was driving his vehicle along the westbound roadway of Bloomfield Avenue. Two of his co-workers, Vegliante and Vuolo, were passengers in his automobile. The parking lights of plaintiff's vehicle were illuminated. As he neared the intersection of U.S. Route 46 he moved his automobile from the right, or slow traffic lane, into the left, or fast traffic lane. This was in accordance with plaintiff's usual driving practice at this point. He "just felt it was the best way to [avoid congestion at the Route 46 junction] and some others [he] knew of shared [his] opinion." After he had accomplished this move he noticed a vehicle ahead of him "fishtailing" or swerving on the ice. That vehicle slowed down, its braking lights illuminated. Plaintiff braked his vehicle and his speed slackened. Before his vehicle came to a complete stop it was struck in the rear by the vehicle of defendant Roland Then (Roland). Plaintiff's automobile was propelled forward by this impact. He brought it to a stop, without *157 skidding, along the left lane of the roadway, within inches of the center divider. Plaintiff, after setting his emergency brake, immediately alighted from his vehicle, leaving it standing in the fast lane. He was followed by Vegliante, the passenger who had been occupying the rear seat. Plaintiff observed the other passenger, Vuolo, who had been sitting in the right front seat, sliding across the front seat towards the driver's position. Roland, in the meantime, had backed his automobile off the travelled portion of the roadway onto the shoulder adjoining the right lane on the north, a distance of 35-40 feet east of where plaintiff had left his car. Plaintiff crossed the roadway to Roland's automobile to ascertain why Roland had collided with his vehicle. Before any conversation took place, and while Roland was lowering his window, plaintiff's vehicle was again struck, this time by the vehicle of defendant Herbert Then (Herbert)  coincidentally, a brother of Roland. The impact of this collision propelled plaintiff's vehicle forward approximately 15 feet and reversed its position so that its front faced in an easterly direction and its rear in a westerly direction. Vuolo thereupon abandoned plaintiff's automobile in the roadway. Herbert's car came to rest to the rear (west) of plaintiff's car, across both lanes, facing the center island. Thereupon, plaintiff "gave one look" to the rear, in which direction he could see two or three car lengths, and immediately re-crossed the highway some 45 feet to the scene of the second collision, for the purpose, as he testified, of ascertaining if anyone were "hurt."
The right rear bumper of plaintiff's automobile was inches from the left side of Herbert's car. Plaintiff testified that he had to jump over the bumper of his car to get to the door in order "to see what had happened to [Herbert]." Before he could open Herbert's car door he heard someone shout a warning to him. Plaintiff immediately backed away from Herbert's car and ran along the roadway in a westerly direction, away from the scene. He had covered a short distance when he was propelled into the air and across the grass plot, coming to rest in the eastbound roadway. This untoward event occurred because of a third or fourth collision *158 hereafter described. The third collision was between a panel truck owned by defendant Silverman and then being operated by defendant Sevek, and plaintiff's automobile. As Sevek was alighting from the panel truck it, in turn, was struck by a dump truck, the property of defendant Pontiac Construction Company (Pontiac), then under the control of defendant Scoppettuolo. Either the Silverman collision with plaintiff's car or the Pontiac collision with the Silverman car caused plaintiff's vehicle to skid along the roadway and strike him.
Vuolo testified that after the first collision and after plaintiff had vacated the driver's place in the vehicle, he "slid over behind the wheel in an attempt to pull the vehicle from the highway." However, "before [he] had an opportunity to shut the door and release the emergency" plaintiff's vehicle was struck again. Vuolo then "felt that that was not a very good place to be, so [he got] out of the vehicle as rapidly as [he] possibly could." Neither his original intention nor his latter action were made known to plaintiff.
Plaintiff admitted that he was aware that the center of the roadway, the scene of the two collisions, was a dangerous place to be, or at least that it was more dangerous than his position at the shoulder of the roadway.
Defendant's position is that there was no controversy as to what plaintiff did or failed to do, and that the evidence was not fairly susceptible of divergent inferences on the question of whether plaintiff's conduct met the requirements of due care. Plaintiff allegedly was guilty of contributory negligence either (1) in abandoning his car in the fast lane after the Roland collision, or (2) in leaving the shoulder and retraversing the highway after the Herbert collision. Defendant argues also that plaintiff assumed the risk of harm when he ventured into the highway after the Herbert collision.
On a motion for involuntary dismissal the party against whom the motion is directed is entitled to have the facts viewed in the light most favorable to his position and to the benefit of all favorable inferences which may legitimately *159 and logically be drawn from the proven facts. Melone v. Jersey Central Power & Light Co., 18 N.J. 163, 170 (1955); R.R. 4:42-2(b).
Contributory negligence and assumption of risk are usually questions for the jury. In an appropriate case, however, they become questions of law for the trial judge and should not be submitted to the jury. This proposition is well stated in Bratka v. Castles Ice Cream Co., 40 N.J. Super. 576, 587 (App. Div. 1956), certification denied 22 N.J. 226 (1956), where the court said:
"While the authorities indicate that contributory negligence and assumption of risk are usually questions for the jury, it is equally plain that in an appropriate case these become questions of law for the trial judge and should not be submitted to the jury. Card v. Carrigan, 137 N.J.L. 722, 724 (E. & A. 1948); George Siegler Co. v. Norton, 8 N.J. 374, 383-384 (1952). Justice Heher, speaking for the court in Bianchi v. South Park Presbyterian Church, 123 N.J.L. 325, 334 (E. & A. 1939), affirming a verdict directed in favor of defendant, said:
`Reason and justice dictate that one cannot deliberately incur an obvious risk, especially where preventive means are at hand, and then hold the author of the danger for the ensuing damage. Whether such conduct be classed as an assumption of risk or contributory negligence, it precludes recovery.'"
In Bacak v. Hogya, 4 N.J. 417, 426 (1950), the court said:
"To justify a dismissal by the court on such ground as a matter of law, the contributory negligence of the plaintiff must appear clearly and conclusively as a fact or as the necessary and exclusive inference that would be drawn by all reasonable men in the exercise of a fair and impartial judgment. Spence v. Maier, 137 N.J.L. 284 (Sup. Ct. 1948); Ackerley v. Pennsylvania R.R. Co., 130 N.J.L. 292 (E. & A. 1943); 38 Am. Jur. (Negligence), § 348, pp. 1052-1055."
In Battaglia v. Norton, 16 N.J. 171, 179 (1954), the court said:
"Only in the clearest case of contributory fault, where the contrary hypothesis is not fairly admissible, does the question become one of law for decisive action by the court. Care is to be taken that the reasonable man be not endowed with attributes which properly *160 belong to a person of exceptional perspicuity and foresight. Taneian v. Meghrigian, 15 N.J. 267 (1954)."
While assumption of risk and contributory negligence are not convertible or identical terms, when defendant's contention is that he owed no duty to protect plaintiff from a particular injury, Pona v. Boulevard Arena, 35 N.J. Super. 148 (App. Div. 1955); Ford v. Reichert, 23 N.J. 429 (1957), yet where, as here, defendant alleges that plaintiff is barred from recovery by his unreasonably exposing himself to the risk of injury caused by defendant's breach of a duty toward plaintiff, the two concepts are virtually identical. Pona v. Boulevard Arena, supra; Klinsky v. Hanson Van Winkle Munning Co., 38 N.J. Super. 439 (1955), certification denied 20 N.J. 534 (1956).
Contributory negligence involves some "breach of duty on the part of an individual. His actions are such as to constitute a failure to use such care for his safety as the ordinarily prudent man in similar circumstances would use." Hendrikson v. Koppers Co., Inc., 11 N.J. 600, 607 (1953). Assumption of risk "may involve no fault or negligence, but rather entails the undertaking of a risk of a known danger." Ibid.
In either event, the negligence or assumption of the risk involved must have proximately contributed to plaintiff's injury if either is to constitute a defense to his action. Paolercio v. Wright, 2 N.J. 412, 418 (1949); Conkling v. Erie R.R. Co., 63 N.J.L. 338, 341 (E. & A. 1899).
The test of contributory negligence which is still applicable in this State was pronounced in Menger v. Laur, 55 N.J.L. 205 (Sup. Ct. 1893), as follows:
"In this state the established rule is that if the plaintiff's negligence contributed to the injury, so that, if he had not been negligent he would have received no injury from the defendant's negligence,  the plaintiff's negligence being proximately a cause of the injury,  he is without redress, unless the defendant's act was a willful trespass, or amounted to an intentional wrong, and in such a case the comparative degree of the negligence of the parties will not be considered."
*161 Menger v. Laur, supra, 55 N.J.L. at page 215; Hartman v. City of Brigantine, 23 N.J. 530, 532 (1957), affirming 42 N.J. Super. 247 (App. Div. 1956).
Defendant urges that "[t]he plaintiff's injuries and the injuries to all of the defendants were caused by one and one act only  the plaintiff's action in recklessly leaving his vehicle on the travelled portion of the road on a foggy day when the road was icy, and placing himself in the middle of that road."
If plaintiff was negligent in leaving his vehicle in the fast lane after the first collision, then every injury that resulted in the natural course of events succeeding that act of negligence must be considered a proximate consequence thereof. It is not necessary that the actor foresee the particular injury which resulted so long as his negligent act was a substantial factor in bringing about that injury. Lutz v. Westwood Transportation Co., 31 N.J. Super. 285 (App. Div. 1954), certification denied 16 N.J. 205 (1954); Glaser v. Hackensack Water Co., 49 N.J. Super. 591 (App. Div. 1958); Genovay v. Fox, 50 N.J. Super. 538 (App. Div. 1958).
There may be any number of causes and effects intervening between the first wrongful act and the final injurious occurrence, if they were such as were the natural and probable consequences of such first act, the last result as well as the first, and every intermediate result, is to be considered in law as the proximate result of the first wrongful cause. A tortfeasor is not relieved from liability from his negligence by the intervention of the acts of third persons where such acts were the natural and probable results of the original negligent act.
In Menth v. Breeze Corporation, Inc., 4 N.J. 428, 442 (1950) the rationale of this rule was stated as follows:
"The theory being that the original negligence continues and operates contemporaneously with an intervening act which might reasonably have been anticipated so that the negligence can be regarded as a concurrent cause of the injury inflicted. One who negligently creates a dangerous condition cannot escape liability for *162 the natural and probable consequences thereof although the act of a third person may have contributed to the final result. The law of negligence recognizes that there may be two or more concurrent and directly cooperative and efficient proximate causes of an injury. Davenport v. McClellan, 88 N.J.L. 653 (E. & A. 1915); Daniel v. Gielty Trucking Co., 116 N.J.L. 172 (E. & A. 1935); 39 Am. Jur. (Negligence), § 63, p. 715; Ibid., § 70, pp. 726-727."
Plaintiff violated R.S. 39:4-136, which reads:
"No person shall park or leave standing a vehicle, whether attended or unattended, upon a roadway, outside of a business or residence district, when it is practicable to park or leave it standing off the roadway. In no event shall a person park or leave standing a vehicle whether attended or unattended, upon a roadway, unless a clear and unobstructed width of not less than fifteen feet upon the roadway opposite the standing vehicle is left for free passage of other vehicles thereon, or unless a clear view of the vehicle may be obtained from a distance of two hundred feet in each direction upon the roadway."
Such conduct is not negligence per se but only one circumstance to be considered by the jury in determining whether, on all the facts and circumstances of the case, plaintiff's action proximately contributed to the result complained of. Jones v. Lahn, 1 N.J. 358, 361-362 (1949).
In addition, plaintiff had travelled this highway every work day for six months prior to the accident and was conversant with the density of morning traffic. On the day in question the highway was icy and visibility fluctuated from 20 to 40 feet. He saw the car preceding him skid on the icy pavement. After the first collision plaintiff could have pulled his vehicle to the left on the grass strip or to the right to the shoulder, as Roland did. That he had adequate time to accomplish either alternative is demonstrated by the fact that after the collision Roland had time to get his car off the highway and plaintiff had time to run over to talk to him prior to the Herbert collision, nor is there any argument to the contrary. Instead, plaintiff saw fit to set his emergency brake and abandon his car in the fast lane of the highway, as a trap for any traveller coming along on the icy, fog-bound highway. The voluntary relinquishment *163 by plaintiff of his car in this position created an obvious and inherent danger to the travelling public.
Plaintiff argues that when Vuolo started to move to the driver's seat, he could have concluded that Vuolo would remove the car from its dangerous position. But plaintiff testified on cross-examination that he couldn't "recall" why Vuolo was moving over. There is therefore no evidential basis for the asserted inference. Vuolo did testify that it was his intention to move the car, but he neither communicated this purpose to plaintiff nor accomplished that result. Further, there is no proof plaintiff ever requested him to move the car.
The Herbert and succeeding collisions were the natural and probable consequences of plaintiff's failure to remove his car from the fast lane of traffic. The entire chain of events succeeding the Roland collision was triggered by this failure. But for this negligent act none of the succeeding collisions would have occurred, nor would plaintiff have been injured.
The imprudence of this action is beyond fair debate. It appears clearly and conclusively as the only inference which could be drawn by reasonable men in the exercise of fair and impartial judgment. Bacak v. Hogya, supra (4 N.J. at page 426).
The trial court should have granted defendant's motion, insofar as that motion concerned plaintiff's negligent conduct in leaving his car on the highway.
In answer to defendant's assertion that plaintiff's act in recrossing the highway from the Roland car was negligence per se, plaintiff argues that he was prompted by the Herbert collision to ascertain whether Herbert was injured and whether his own two passengers were in need of assistance, and that the question of the reasonableness of his act is for the jury. Inferentially he raises the defense of rescue, i.e., the "disaster invites rescue" doctrine, without referring thereto eo nomine. This, plaintiff argues, raises a factual question which had to be submitted to the jury and could not be determined by the court. The rescue doctrine makes *164 the original actor whose negligent conduct threatens harm to another's person liable to a third person who is injured as a result of his attempt to avert such threatened harm. The original wrong which imperils life is not only a wrong insofar as the imperiled victim is concerned, but is a wrong also to his rescuer. Genovay v. Fox, 50 N.J. Super. 538, 563 (App. Div. 1958); Cafone v. Spiniello Construction Co., 42 N.J. Super. 590 (App. Div. 1956); Butler v. Jersey Coast News Co., 109 N.J.L. 255 (E. & A. 1932); Layden v. Goodyear Tire & Rubber Co., Inc., 129 N.J.L. 54 (E. & A. 1942); Tarnow v. Hudson & Manhattan R.R. Co., 120 N.J.L. 505 (Sup. Ct. 1938), affirmed 121 N.J.L. 522 (E. & A. 1939); Prosser on Torts, p. 272 (1955).
Generally, contributory negligence and assumption of risk are not to be considered as a court question as to one who exposes himself to danger of injury in a manner not reckless or rash, in order to rescue another from imminent danger. Tarnow v. Hudson & Manhattan R.R. Co., supra; Layden v. Goodyear Tire & Rubber Co., Inc., supra; Restatement, Torts, § 472, p. 1241; 38 Am. Jur., Negligence, § 228, p. 912; 65 C.J.S. Negligence § 124, p. 736. This rule, however, has no application where the perilous situation of the endangered person's peril is due in part to the rescuer's own negligence, since such negligence is a contributing factor in producting any harm which he sustains in the attempted rescue. Restatement, Torts, § 472, note p. 1242; 38 Am. Jur., Negligence, § 229, p. 914; 65 C.J.S. Negligence § 124, p. 738.
By reason of the fact that we have concluded that plaintiff's negligence was a contributing factor in producing whatever peril his passengers or Herbert might have been subjected to, the general rule is inapplicable.
Reversed and remanded for entry of judgment for defendant.