70 N.J. Super. 256 (1961)
175 A.2d 465
ALEXANDER SCHWARTZ, PLAINTIFF-RESPONDENT,
v.
STEPHEN ZULKA, JOSEPH GOODHARDT, T/A GOODHARDT'S GULF SERVICE STATION, GULF OIL CORPORATION, PENNSYLVANIA CORP., TREMARCA CORPORATION, DEFENDANTS, AND NORTH JERSEY BUILDING CONTRACTORS CORP., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 18, 1961.
Decided November 2, 1961.
*258 Before Judges CONFORD, FREUND and LABRECQUE.
Mr. Robert E. Tarleton argued the cause for defendant-appellant North Jersey Building Contractors Corp. (Messrs. Beggans and Keale, attorneys; Mr. James P. Beggans, of counsel).
Mr. Seymour Margulies argued the cause for plaintiff-respondent (Mr. Herbert Winokur, attorney; Messrs. Levy, Lemken & Margulies, of counsel and on the brief).
*259 The opinion of the court was delivered by CONFORD, S.J.A.D.
Plaintiff was an employee of a roofing company engaged by the defendant, North Jersey Building Contractors Corp. ("North Jersey," hereinafter), to do the roofing in connection with the construction of a gasoline service station which North Jersey was erecting as general contractor for the owner. He brought this action to recover for personal injuries sustained when he fell off the roof in the course of his work. He claims the accident occurred because of the negligence of the defendant Zulka, the carpenter-subcontractor on the job, in leaving a protruding nail near the edge of the roof, on which he tripped, and that of North Jersey in failing to find and remove the nail by a proper inspection after Zulka finished his work.
After denial by the court of motions by both defendants for involuntary dismissals, the trial jury in the Superior Court, Law Division, returned a verdict of no cause of action in favor of the defendant Zulka but awarded plaintiff damages of $17,500 as against defendant North Jersey. Thereafter plaintiff moved for a new trial on the ground of the inadequacy of the verdict (which the trial judge treated as a motion for a new trial on the issue of damages only). Simultaneously, North Jersey filed a motion for judgment in its favor notwithstanding the verdict. The trial judge denied the latter motion, but he granted plaintiff's motion unless the parties stipulated that plainiff would accept and defendant pay the sum of $30,000.[1]
Apparently not realizing at first that there was no final judgment at this juncture, North Jersey appealed the "final judgment" in favor of Schwartz, the denial of its motion for judgment notwithstanding the verdict and the grant of a *260 new trial limited to the issue of damages. The defendant Zulka was not made a party to this appeal. Later, however, North Jersey moved in this court for leave to appeal, which was granted, over plaintiff's objection. The order expressly covered the subject matter of the notice of appeal already filed.
There is no appeal before the court affecting the jury verdict and judgment absolving the defendant Zulka.

I.
We first turn to the defendant's contention that plaintiff failed to establish that North Jersey breached any duty owed to him. If valid, the court should have granted either defendant's motion for an involuntary dismissal or its motion for a judgment notwithstanding the verdict.
The theory of liability to which the compass of plaintiff's proofs narrowed at the trial was that defendant, as responsible occupier and in control of the premises under construction, owed a duty to plaintiff as invitee on the building to exercise reasonable care to provide him with a safe place to work thereon; that this duty included an obligation to inspect the roof after the carpenter, Zulka, finished his work on it, so as to detect and eliminate any hazards to the safety of the roofing workmen who were to follow the carpenter on the roof; and that although North Jersey did undertake to inspect and clean the roof it did so negligently, failing to find an 8-penny nail which was left projecting an inch above the flooring after Zulka completed his labors, as a result of which plaintiff tripped over it while performing the roofing job and fell over the edge of the roof.
Although each of the factual elements in the foregoing hypothesis of liability was disputed at the trial, we conclude, after a full examination of the transcript printed in the appendix, that the jury could have found from the testimony in the affirmative as to each such factual predicate of liability. Zulka had finished his work on the roof two days before the *261 day plaintiff began his work and sustained his injury. No other work involving the use of nails was done on the roof in the interim. Plaintiff testified he tripped over what felt like a nail; and his co-worker, DeRosa, testified that he went on the roof immediately after the accident, found a nail of the stated description at the spot where plaintiff tripped, and hammered it into the board. While the roofers themselves had been using nails in their work, those were of a smaller and different type, and there had been no nailing by them at the precise area where plaintiff assertedly tripped. Tedino, president of North Jersey, testified he inspected the roof the day before the accident. He did not remember seeing any "scrapings, or any debris, or any nails * * *." There was also testimony, which, although cloudy, could have permitted a finding that either Tedino or one of his workmen swept the roof in the interval between Zulka's finishing work on the roof flooring and plaintiff's arrival on the scene.
Defendant argues there was no duty of inspection of the roof on its part extending to the plaintiff. This court has recently recognized the general principle that tort liability of a general contractor to employees of subcontractors performing construction work on the premises may be founded in part on the assumption that the owner has placed the general contractor in physical control of the job site; and that by virtue of this control the general contractor is burdened with a duty similar to that owed by the landowner to business invitees, i.e., to exercise reasonable care to maintain the premises in a reasonably safe condition. Wolczak v. National Electric Products Corp., 66 N.J. Super. 64, 70 (App. Div. 1961); Restatement, Torts, § 387. The facts in the instant case clearly warrant the application of that principle. The rule as to the duty of due care by a land occupier requires additional refinement, however, in application to a situation where the occupier, whether an owner or a general contractor in control of a building under construction, is having repair, maintenance or construction work *262 done thereon by an independent contractor. Since the work contracted for may be faulty and constitute a hazard to invitees coming onto the premises thereafter, particularly employees of subcontractors, see Meny v. Carlson, 6 N.J. 82, 95 (1950), there may under appropriate circumstances be a duty of inspection by the land occupier of the work of the subcontractor, default as to which and consequent injury to an invitee may subject the occupier to liability to the injured invitee. Prosser, Torts (2d ed. 1955), § 64, pp. 358-359; 2 Harper and James, Torts (1956), § 26.1, p. 1362, § 26.11, p. 1405; 2 Restatement, Torts, § 412, pp. 1114-18; see Bergquist v. Penterman, 46 N.J. Super. 74, 84 (App. Div. 1957), certif. den. 25 N.J. 55 (1957); Blankley v. Nostrame, 30 N.J. Super. 405, 407, 408 (App. Div. 1954). Compare the theory of transfer of the responsibility of the negligent contractor to the accepting owner applied in such cases as Miller v. Davis and Averill, Inc., 137 N.J.L. 671, 675 (E. & A. 1948), in exculpating the contractor. Applying the principle of the owner's obligation to inspect, in similar or analogous circumstances: Goar v. Village of Stephen, 157 Minn. 228, 196 N.W. 171 (Sup. Ct. 1923); Winslow v. Commercial Bldg. Co., 147 Iowa 238, 124 N.W. 320, 28 L.R.A., N.S., 563 (Sup. Ct. 1910); Newell v. K. & D. Jewelry Co., 119 Conn. 332, 176 A. 405 (Sup. Ct. Err. 1935); Hickman v. Toole, 35 Ga. App. 697, 134 S.E. 635 (Ct. App. 1926); and see Doerr v. Rand's, 340 Pa. 183, 16 A.2d 377 (Sup. Ct. 1940); McCrorey v. Thomas, 109 Va. 373, 63 S.E. 1011 (Sup. Ct. App. 1909).
We are satisfied that the facts here involved, in the light of the principles of law discussed above, warranted the trial court's submission to the jury of the question of North Jersey's liability on the theory, if the jury chose to so conclude from the evidence, that it could have discovered the defect alleged (the protruding nail) "in the exercise of reasonable care upon the inspection of said independent contractor's [Zulka's] work after it had been completed."
*263 The defendant has not argued against liability on the basis of negation of duty because of occupational risk inherent in the plaintiff's work, see Meistrich v. Casino Arena Attractions, Inc., 31 N.J. 44, 48-50 (1959); Wolczak v. National Electric Products Corp., supra (66 N.J. Super., at pp. 75, 76), and we therefore do not discuss the problem at any length. We have, however, of our own accord, considered the potential applicability of that defense and concluded to the contrary. While defendant could not fairly be assigned a duty in respect of risks inherent in the elevation at which plaintiff worked, per se, yet the hazard of falling by tripping over a random obstruction left by a previous contractor and carelessly missed by the inspection efforts of defendant is within the fair ambit of defendant's duty, if the jury elects to make the findings and draw the inferences equating with negligence.
Thus we conclude defendant's position cannot be maintained insofar as it is based upon either absence of liability as a matter of law or insufficient evidentiary support.

II.
The defendant strikes a richer lode when it assails the decision of the trial court to limit the new trial to the issue of damages. There is no reasonable dispute over the position advanced by the plaintiff below in contending for a new trial that the jury verdict was indefensibly inadequate. We find no occasion to discuss the testimony as to plaintiff's physical injuries, pain and suffering, permanence, medical expenses and loss of earnings, for both parties on this appeal agree that the award was "grossly inadequate," to quote defendant's brief, and we concur with the conclusion of the trial judge to that effect. The point of issue, however, lies in defendant's contention that in the light of the close questions presented as to defendant's liability the inadequacy of the award manifests the strong probability of compromise by the jury, thereby warranting nullification of the verdict *264 in respect of liability as well as damages. The view of the trial court, on the other hand, was that "from the evidence adduced and the court's instructions to the jury it had ample basis to fix liability for this accident against only * * * North Jersey * * * so that disassociated from the question of damages that verdict ought to stand." This position is supported by plaintiff on the appeal.
While the discretionary judgment of a trial judge is ordinarily entitled to great weight in determining an issue of this kind on a motion for a new trial, we nevertheless conclude that the positive guiding principles laid down by our courts in such situations compel an impugnment of the verdict in its entirety under the facts of this case. The recent decision of the Supreme Court in Kopec v. Kakowski, 34 N.J. 243 (1961), illustrates the precept that a close factual contest of the issue of a defendant's liability in conjunction with a manifestly inadequate award of damages to a plaintiff will strongly indicate the propriety of a conclusion of compromise by the jury and the setting aside of the verdict of the jury in its entirety.
The law on this subject was comprehensively collated in our opinion in Dahle v. Goodheer, 38 N.J. Super. 210 (App. Div. 1955), certif. den. 20 N.J. 534 (1956). In that case there was no close question of liability as between the plaintiff and the particular defendant against whom an inadequate jury verdict was returned, the evidence being strong for a finding of negligence by that defendant and weak as against another defendant which the jury absolved. The court therefore held that the issue of liability was fairly determined by the jury and the verdict thereon disassociated from its error as to damages, and a retrial was ordered as to damages only. But where the issue of liability is close or questionable with respect to the party held in by the jury, and the verdict grossly inadequate, the rule is that the limitation of a new trial to damages will be ordered only where the verdict is clearly free from compromise. Hendrikson v. Koppers Co., Inc., 11 N.J. 600, 608, 609 (1953). In such *265 a case the proponent of the limited new trial carries the laboring oar of demonstrating freedom from compromise. Esposito v. Lazar, 2 N.J. 257, 259, 260 (1949).
Applying these principles to the circumstances of the present case, it is clear to us that the jury might have well arrived at a verdict exculpating defendant on any or all of these alternative hypotheses: that the accident was a sheer mischance, not the fault of anyone; that plaintiff was guilty of contributory negligence; or that the accident was solely the fault of the defendant Zulka, the defendant North Jersey not being negligent in failing to discover the nail (assuming plaintiff actually tripped on a nail). In view of all these cogently tenable conclusions on the facts, the incidence of a liability verdict against the defendant, and against it alone, and a grossly inadequate award of damages, leaves us in a state of mind which, far from being satisfied there was no compromise, is impressed with its strong probability. The trial judge stated no specific reason why he was persuaded otherwise. Under all the circumstances, we are constrained to find a mistaken exercise of discretion by the trial judge in limiting the new trial to damages. There will be a new trial on all issues.

III.
Our conclusion in II herein renders academic defendant's additional contention that the verdict should be vitiated on grounds of inconsistency because of the jury's exculpation of Zulka while holding in North Jersey. The argument is that the only theories of liability submitted by the court to the jury in the charge were negligence by Zulka in leaving the nail on the roof and negligence by North Jersey in failing to find and eliminate it, and that North Jersey could not logically be found to have been negligent in not finding the nail if Zulka is found not to have left it there. As the contingency of such a disparate verdict cannot arise at the new trial, Zulka's exoneration not having been appealed, there is no present purpose in extended discussion of the *266 point. We merely note that the issues of liability were not as narrow as assumed by defendant. The duty of each defendant was to exercise reasonable care in its sphere. The jury could conceivably have reasoned that Zulka left the nail but was not, in the light of his testimony, in default of reasonable care in doing so. His obligation was not an absolute one to leave the roof free of protruding nails.
Reversed and remanded for a new trial on all issues.
NOTES
[1] The propriety of imposing the condition of payment by defendant of the increased award, as distinguished from consent thereto, is not an issue herein; but see and compare Marty v. Erie R.R. Co., 62 N.J. Super. 458, 467 (App. Div. 1960), and Rommell v. U.S. Steel Corp., 66 N.J. Super. 30, 35 (App. Div. 1961), with Bachmann v. Passalacqua, 46 N.J. Super. 471, 474 (App. Div. 1957).