71 N.J. Super. 587 (1962)
177 A.2d 568
E. STANLEY BARRIE, PLAINTIFF-APPELLANT,
v.
THE CENTRAL RAILROAD COMPANY OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 11, 1961.
Decided January 5, 1962.
*588 Before Judges CONFORD, FREUND and LABRECQUE.
*589 Mr. Stanley W. Greenfield argued the cause for plaintiff-appellant.
Mr. Prospero DeBona argued the cause for defendant-respondent (Messrs. Milton, Augelli & Keane, attorneys).
The opinion of the court was delivered by CONFORD, S.J.A.D.
Plaintiff sued to recover damages for his personal injuries sustained when he fell, as he claims, from an open vestibule of a train car operated by defendant on which he was riding as a passenger June 3, 1958. The injuries were extremely serious and extensive. The trial court permitted the case to go to the jury after reserving decision on defendant's motions for an involuntary dismissal and for judgment in its favor on the ground no prima facie case of negligence and proximate cause was established by the proofs. The jury returned a verdict of $50,000 in favor of plaintiff. Thereupon plaintiff applied for a new trial as to damages only, the verdict being contended to be grossly inadequate. Defendant renewed its motion for judgment, and, in the alternative, moved for judgment notwithstanding the verdict or for a new trial on all issues.
The trial court granted defendant's motion for judgment notwithstanding the verdict. The order further provided, pursuant to R.R. 4:51-2(b), that in the event of reversal on appeal, a new trial be awarded defendant on the ground, among others, that the verdict was the result of compromise. There were other provisions in the order not pertinent in view of our conclusions on the appeal.

I.
We first consider the appellate complaint against the grant of judgment in favor of defendant notwithstanding the verdict. In passing upon a motion for such relief the trial court may not weigh the evidence but must accept *590 as true all evidence which supports the position of the adverse party and give him the benefit of all legitimate inferences susceptible therefrom in his favor. Kopec v. Kakowski, 34 N.J. 243, 244 (1961). We thus assay the proofs in that light.
Plaintiff boarded the 7:46 A.M. train of the Central in Plainfield on June 3, 1958, as was his custom as a daily commuter. The train was an express to Jersey City and made no stops en route. There was nothing unusual about the plaintiff's conduct or demeanor that morning insofar as his wife, who drove him to the station, or two friends and fellow passengers could see. He had dressed with particular care as he was to attend a company dinner that evening. There had been a conductor in the car, but he was not present when plaintiff went into the vestibule or when the fall from the train occurred. After a smoke in the smoking car, plaintiff arose with the intention of going to the next car forward, a nonsmoker; he carried his topcoat and newspaper. He walked to the front of the car, opened the door to the vestibule, swung it back, and, as he testified, "that's the last thing that I recall until I awakened in the hospital." In consequence of plaintiff's falling out of the moving car, his head was severely traumatized by contact with the ground. A brain surgeon testified that plaintiff was suffering from amnesia as to the details of the accident  a common sequela of a severe head injury  which could be permanent.
There was evidence that at the time of the fall the train was in course of rounding a 63° curve to the left at a speed of 50-55 miles per hour (plaintiff fell from the right side). The defendant produced one of its employees, a brakeman named Stauffer, who testified he witnessed the fall from his position in its Bayonne Yard. He said plaintiff "stepped down from the platform, and stepped down the three steps and off into the air" while the train was going at least 50 miles per hour. "He had a topcoat over his arm and a briefcase." However, two Bayonne policemen who investigated *591 the accident the same morning testified Stauffer told them at the time he did not know anything about it.
The hospital records of the Bayonne Hospital were introduced in evidence. They contain different and conflicting versions of the accident, both purportedly emanating from the plaintiff shortly after his removal to the hospital on the morning of June 3, 1958, suffering from a "compound depressed skull fracture," among other injuries. Page 3 of the exhibit, written by an intern, Dr. Alonso, states: "Upon interrogation patient says he became suddenly despondent and jumped off a moving train with resultant serious injuries." Page 14, over the signature of Dr. Boyle, the attending physician, contains the following:
"Upon interrogation patient states that somebody told him he jumped off a moving train. He says he does not remember doing so. He describes memory of sitting, looking out window of smoking car and attempting to change cars while train was in motion. He remembers a vestibule and an open door and then a flash of light. The next thing he recalls is lying on the R.R. tracks."
Dr. Boyle testified he arrived at the hospital soon after plaintiff's admission and that when he arrived there he found present in the plaintiff's room, among others, a man who identified himself as a railroad representative and whom he knew as such. Although in serious condition and in shock, plaintiff was mentally oriented at the time. Dr. Boyle was precluded, upon objection, from testifying to his conversation with plaintiff as to how the accident occurred, on the ground it was self-serving hearsay beyond the purview of permissible history by a patient to a physician. The doctor had said his questioning of the patient was for purposes of treatment.
As to the hospital entry made by Dr. Alonso, that physician testified he did not remember the case or the incident at all, merely that it was written in his handwriting. He is a native of the Dominican Republic, and his testimony revealed considerable difficulty in comprehension of and *592 expression in English. He did not remember whether any railroad man was in the room at the time.
Dr. Boyle called in Dr. Winokur, a neuro-surgeon, as a consultant, and that doctor saw the patient the morning of the accident. He recorded in the hospital records a history of a "fall from a train." Over the period of his treatment of the patient from June to November 1958 he found no psychiatric illness or disturbance in the patient.
The railroad company did not produce at the trial any member of the June 3, 1958 train crew who might have testified as to the condition of the trap door or outside vestibule door as of the time of the event here involved. A fellow-passenger of plaintiff on the train, a regular commuter on the railroad from Plainfield to New York, was upon objection not allowed to testify as to the "practice of the railroad, before June 3, 1958 with regard to whether or not the outer doors were open or shut after the train left Plainfield." This, however, is not urged as a point of appeal.
An engineer testifying as an expert witness for the plaintiff gave it as his opinion that a person walking forward from one car to another through the vestibule while the train was negotiating the Bayonne curve at 50 miles per hour would be thrown to the right against the outer door of the car.
We are constrained to the conclusion that on the law and the most favorable view of the evidence from plaintiff's standpoint, the case for defendant's liability was properly given to the jury in the first instance.
It is the general rule that a common carrier of passengers must use a high degree of care to protect them from danger that foresight can anticipate. Rourke v. Hershock, 3 N.J. 422, 426 (1950). In Harpell v. Public Service Coordinated Transport, 20 N.J. 309, 316, 317 (1956), the court approved the expression that: "Carriers who accept passengers entrusted to their care must use great caution to protect them, which has been described as *593 `the utmost caution characteristic of very careful prudent men,' or `the highest possible care consistent with the nature of the undertaking.'" In specific application to falls by train passengers from open vestibule doors, the courts have permitted juries to find violation of the requisite standard of care by the carrier in such cases as Rivers v. Penna. R.R. Co., 83 N.J.L. 513 (E. & A. 1912); Potter v. Pennsylvania Railroad Co., 113 N.J.L. 441 (E. & A. 1934); and Holle v. D., L. & W.R.R. Co., 122 N.J.L. 358 (E. & A. 1939). Contra: Wright v. Central R.R. Co. of N.J., 124 N.J.L. 113 (E. & A. 1939) (decided by a 9-6 vote). Compare the majority and dissenting opinions in Pennsylvania Railroad Company v. Pomeroy, 99 U.S. App. D.C. 272, 239 F.2d 435 (D.C. Cir. 1956), cert. denied 353 U.S. 950, 77 S.Ct. 861, 1 L.Ed.2d 859 (1957).
The following expression from the Potter case, supra, is pertinent (113 N.J.L., at p. 444):
"Of course, it is true as a practical matter that the vestibules of trains are largely for the very purpose of insuring against passengers being thrown off when passing from car to car. In fact, the custom is general of passing from car to car for any legitimate purpose. Take, for example, a through train with a dining car attached. The passengers have to go to the dining car and often have to traverse half a dozen cars or more in order to reach it. We incline to say that the vestibule of a train, while not to be regarded as an invitation to a passenger to move around unnecessarily, is intended as a protection to a passenger having a legitimate reason for going from one car to another, as this man had if his story is to be believed; and that whatever may be said of the propriety of keeping the vestibules open on the side of the train toward the station, the jury could well say it was negligent to leave the vestibule open on the other side from the station."
It is obvious that if the defendant, by its employees, opened or left open the outer vestibule door of the car through which plaintiff was passing, and the condition persisted for an undue period of time, or was not for a reasonably necessary purpose, in the light of hazards to passengers, a jury might conclude there was actionable *594 negligence, particularly under the circumstances of the train's speed and direction here involved. But defendant argues there was no evidence the door was even open, except as plaintiff himself might have opened it. We are satisfied the proofs permitted an inference that the door was open by means other than through the instrumentality of the plaintiff himself. The hospital record of history taken from plaintiff by Dr. Boyle suffices for this purpose. Therein plaintiff remembered "a vestibule and an open door" as he was attempting to change cars. Moreover, there was evidence that the trap door, normally flush with the platform floor, which in closed position covers the steps, was open, and the steps exposed. A jury might well have declined to believe that plaintiff, unaided, and encumbered with briefcase or newspaper and topcoat on his arm, could or would have opened the door and lifted the trap door while the train was in rapid motion around a sharp curve. Nor can we condemn as merely conjectural the potential inference from all the facts and circumstances, including the absence of explanation by any member of defendant's train crew, that the trap door and side vestibule door had been opened by a railroad employee, or, by whomever opened, had been left open for an unreasonable period of time before the accident, possibly since the train left Plainfield.
Plaintiff also stresses that reasonable men might well hold that defendant should have stationed conductors at the car doors to prevent passengers from going from one car to another while the train was negotiating such a severe curve at high speed, realizing the danger of a passenger's being thrown toward the vestibule door. This argument does not impress us. The defendant could hardly be expected to have stationed a conductor at each car end whenever the train rounded any substantial curve. What does satisfy us as sufficient to have created an issue of defendant's liability for the jury's resolution is the likelihood that the outer vestibule door was either opened by defendant's agents or left open by them, by whomever opened originally, for *595 a period of time projecting inordinate risks to passengers undertaking to go from car to car during the movement of the train, particularly around curves at high speed, and preventable by the exercise of such care by the defendant as the circumstances called for.
Defendant argues that the hospital record of history favorable to plaintiff's factual theory as to the open door was not properly evidential of that fact, citing Clayton v. Jersey Central Power & Light Co., 19 N.J. Super. 546 (App. Div. 1952), certif. denied 10 N.J. 314 (1952). But it is first to be noted that the hospital record went into evidence in entirety without any objection or qualification on the part of the defendant; and that the charge of the court to the jury stated:
"Now with reference to the hospital record, I charge you the following: The believability and credibility of the history contained in the hospital record are for you to determine. In considering this question, you must consider all of the evidence with regard thereto, whether offered by the plaintiff or the defendant. You may accept that which you believe to be true and disregard that which you believe to be untrue."
No objection was made to the charge by defendant. Consequently, no appellate argument can be based upon an alleged lack of justification for the jury's use of the record in plaintiff's favor on the issue discussed in arriving at its verdict against the defendant.
On the substantive side, moreover, the law relative to the evidential use of history given a treating physician by a patient has travelled a significant distance since the decision in the Clayton case, supra. Gilligan v. International Paper Co., 24 N.J. 230 (1957); Bober v. Independent Plating Corp., 28 N.J. 160 (1958); Kasiski v. International Paper Co., 31 N.J. 267 (1959), reversing and adopting the dissenting opinion in 58 N.J. Super. 353, 369 (App. Div. 1959); Greenfarb v. Arre, 62 N.J. Super. 420 (App. Div. 1960), certif. denied 33 N.J. 454 (1960). The rule now is that where the history is given *596 by a patient to a treating physician and received by the latter for purposes of diagnosis or treatment, to which it is pertinent, particularly under circumstances importing spontaneous motivation for truthfulness on the part of the patient, it will be admissible as substantive evidence, at least when the declarant is dead and no other source of the information related is available. Bober v. Independent Plating Corp., supra (28 N.J., at p. 172); Greenfarb v. Arre, supra (62 N.J. Super., at p. 430). Here, plaintiff's amnesia meets that rationale. In our judgment, what plaintiff told Dr. Boyle, as recorded in the hospital record, is admissible substantively under the authorities cited in proof of the fact that the outer car door was open when plaintiff entered the vestibule of the car.
We conclude there was error in granting the judgment for defendant notwithstanding the verdict.

II.
We turn to the alternative ruling of the trial court granting a new trial on all issues because of compromise by the jury. Defendant defends, plaintiff attacks, this determination. We think that as to this feature of the case the trial court was clearly right.
The issue as to liability was, as is obvious from I herein, a closely contested one. At the same time, the $50,000 verdict returned by the jury was grossly inadequate. We need not detail plaintiff's injuries. Suffice it to say they were grievous in the extreme. His life hung in the balance for weeks, and his anguish endured for months. He was in the hospital five and one-half months. At the trial, three years after the accident, plaintiff was still substantially disabled, with the prospect ahead of him of a fusion operation which will entail additional months of hospitalization and expense. As his counsel told the jury in summation, there was about $38,000 in special damages alone. It is patent that the $50,000 verdict constituted only a *597 fraction of a fair and reasonable award of damages, and the inference of compromise by the jury is almost irresistible. At the very least, the verdict cannot be deemed clearly free from compromise, and the new trial must therefore encompass all issues. Hendrikson v. Koppers Co., Inc., 11 N.J. 600, 608, 609 (1953); Kopec v. Kakowski, 34 N.J. 243 (1961); Schwartz v. Zulka, 70 N.J. Super. 256 (App. Div. 1961).
Judgment reversed insofar as judgment was entered for defendant; affirmed insofar as concerns alternative award of new trial on all issues.